CORRIGAN, EXR., APPELLEE, *v.*
COUGHLIN ET AL., APPELLANTS.

CORRIGAN, EXR., APPELLEE, *v.*
COUGHLIN ET AL., APPELLEES;
MCKENNA, APPELLANT.

(Nos. 45659 and 45678—Decided
August 11, 1983.)

*Mr. John K. O'Toole,* for Frank J. Corrigan, executor.

*Mr. Timothy J. Delaney,* for appellants Mary Patricia Coughlin, Thomas Coughlin, Karen Soltis, Timothy Coughlin, Kathleen C. Delaney and Margaret Mary Coughlin.

*Mr. Joseph P. Gibbons,* for appellant Martin J. McKenna.

*Mr. Roger D. Tibbetts,* for Nancy O'Leary.

*Mr. William J. Coyne,* for Marilyn Corrigan, Rev. Edward Freeman and Mary Gorbett.

*Mr. Robert Senor,* for Rita McKenna.

*Mr. Marvin Koblentz,* for Diane Daugherty.

*Mr. Bruce Hirsch,* for Dianne Gilboy and Carol Freeman.

NAHRA, J. Frank J. Corrigan, in his capacity as Executor of the Estate of Hazel M. Lorman, filed a bill for declaratory judgment in the probate court. He asked the court to determine whether certain joint and survivorship accounts were valid. These accounts were created in October 1979, two years before Ms. Lorman's death, when she was eighty-four. The other names on the accounts are three nieces and one nephew of the childless Ms. Lorman: Rita McKenna, Marilyn Corrigan, Mary Gorbett and Reverand Edward Freeman. It is the circumstances underlying the creation of the accounts that is at issue in this case.

The record indicates that at one time Ms. Lorman kept a sizable sum of money deposited in a variety of passbook savings accounts. In 1979, she asked Rita McKenna to review those accounts. Ms. McKenna made several recommendations for the purposes of increasing the interest and easing the complexity of the accounts. Ms. Lorman settled on joint and survivorship accounts. These were duly created, with Ms. McKenna going to the banks and bringing the forms to Ms. Lorman's house to sign. Although the elderly Lorman was able to run some errands, this type of banking was, according to Rita McKenna's testimony, too much of a strain. Once initiated, Ms. McKenna took care of servicing the accounts, with Ms. Lorman never leaving her house to sign the papers. The evidence also indicated that the signatures were Ms. Lorman's, that Rita McKenna was known throughout the family as one with some financial acumen, and that the four individuals named in the accounts were the people closest to Hazel Lorman.

The trial court found the accounts to be valid and the survivors to be entitled to their shares. The beneficiaries under the will appeal, assigning four errors.

We shall treat the first two assignments of error together. These state:

"I. The judgment of the trial court that ten joint and survivorship accounts were created is contrary to law inasmuch as there were no valid account contracts

for the deposit of these funds between the decedent and the financial institution.

"II. The judgment of the trial court that the decedent, Hazel M. Lorman, intended the survivors listed on the accounts to succeed to ownership of the accounts upon her death is insufficient to declare valid the ten joint and survivorship accounts, inasmuch as no present interest vested in the survivors so the accounts are not valid joint and survivorship accounts."

Appellants (the beneficiaries under the will) claim that there must be a valid underlying contract to initiate joint and survivorship accounts and that because Rita McKenna added information to the blank cards used by Hazel Lorman after Ms. Lorman had signed them, the mutual assent necessary to validate the contract was lacking.

We need not address this assertion. Even if there was not a proper contract, such a contract is no longer necessary to establish such accounts. The Supreme Court held in *In re Estate of Thompson* (1981), 66 Ohio St. 2d 433, 437 [20 O.O.3d 371], that:

"* * * Because these statutes [R.C. 1107.08(A) and 1151.19(A)] authorize the use of such accounts, it is not necessary to utilize the rigid contractual analysis of our earlier cases. Instead, our goal should be to effectuate the intent of the party or parties creating such accounts."

The trial court herein found, upon substantial evidence, that there was an intent to create these accounts. Appellants ask us to declare *Thompson* unconstitutional because, in resting its holding upon certain unenacted portions of the Uniform Probate Code, the Supreme Court usurped the legislative function. This we cannot do. *Thompson* alters Ohio common law to better fit certain statutory intent, and used the Uniform Probate Code (hereinafter "UPC") to effectuate that intent. One of the adopted UPC sections declares, in part, that:

" 'Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.* * *' " *Thompson, supra,* at 438, quoting Section 6-104(a) of the UPC (1969).

Appellants' argument that there must be a present interest vested in the survivors is based on *Eger v. Eger* (1974), 39 Ohio App. 2d 14 [68 O.O.2d 150]. However, *Eger*, which required an underlying contract as well as equal interests, must be taken as modified in light of *Thompson*. *Eger*, in any case, held that if such an account were intended, then the interest did vest. *Thompson* has made intent the crucial criterion for creation, and it has here been met. These assignments of error are overruled.

The third assignment of error states:

"III. The judgment of the trial court that the ten joint and survivorship accounts are valid is contrary to law inasmuch as a presumption of undue influence arose which was not rebutted by the survivors."

Appellants claim that because Hazel Lorman relied upon Rita McKenna to make the deposits, and because Ms. McKenna took over those deposits, there should be a presumption of undue influence. This is, in fact, the square holding of *Beaver v. Redmond* (1966), 8 Ohio App. 2d 80, 90 [37 O.O.2d 86]:

"After a review of the cases, we conclude that, when a beneficiary of a joint and survivorship bank account has a confidential relationship with the depositor or the depositor depends on the beneficiary to accomplish his intent in the creation of the joint and survivorship account, a presumption of undue influence arises, and the burden of going forward with evidence shifts to the beneficiary to show that his conduct was free of undue influence or fraud."

However, the trial court found that the presumption of undue influence was

rebutted. There is ample evidence to support such a finding. Hazel Lorman was in relatively good health, alert and knowledgeable. She initiated the idea to change from passbook to another type of account. She knew what joint and survivorship accounts were from working in a lawyer's office. Moreover, those accounts named as beneficiaries those four persons she unquestionably knew best. (This excepts a sister, Marion Freeman, the mother of Rev. Freeman and Mary Gorbett, who was, however, old and quite ill. She died during this litigation.) We cannot hold that the trial court's finding was against the weight of the evidence.

The final assignment of error states:

"IV. The trial court erred in restricting counsel's cross-examination of Rita McKenna."

The trial court restricted questioning on Rita McKenna's employment status and income. Appellants wished to show that because Ms. McKenna was relatively impoverished, there is an additional presumption that she unduly influenced Ms. Lorman. Counsel at trial claimed that lack of income influences improper behavior.

The fact that Ms. McKenna would take under the accounts already affected her credibility. We do not find it to be an abuse of the trial court's discretion that the witness' poverty not be allowed to be an additional reason. The exchange on the record indicates that counsel wished the court to allow a presumption that poor people would behave worse because they were poor. Exclusion of such evidence under the circumstances was not erroneous.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PRYATEL, J., concurs.

PATTON, C.J., not participating.