PONTIUS, Exr., Appellee,

v.

NADOLSKE et al., Appellants.

[Cite as *Pontius v. Nadolske* (1989), 65 Ohio App.3d 522.]

Court of Appeals of Ohio,
Summit County.

No. 14123.

Decided Dec. 6, 1989.

*Bruce H. Wilson,* for appellee.

*David L. Headley,* for appellants.

CACIOPPO, Presiding Judge.

William Nadolske, Joanne Nadolske, Kaye Fabinak, Janice Cheyney, Teresa King, Christopher Cheyney and Elizabeth Cheyney (collectively, "Nadolske") challenge the judgment of the Summit County Court of Common Pleas, Probate Division, that the funds in certain bank accounts are assets of the estate of Ella A. Nadolske. We affirm.

In 1961, Ella A. Nadolske ("Ella") married Julian A. Nadolske, father of appellant William Nadolske. Ella and Julian Nadolske combined their assets into bank account 003099075 in 1961. In 1984, Ella and Julian added the name of William Nadolske to their bank account. Julian died in May 1985. Shortly after her husband's death, Ella went to the bank, planning to have Julian's name deleted from the account. Bank personnel told Ella that she could remove up to seventy-five percent of the money in checking account 003099075 to hold in a savings account until Julian's will was probated. Acting upon this instruction, Ella withdrew approximately $65,000 from account 003099075 and deposited it in account 8410873105 on June 6, 1985. William Nadolske added his name to the new account at Ella's request. After Julian's will was probated, Ella closed account 8410873105 and transferred the funds to checking account 003099075 and savings account 0013099075 in 1986. Ella and William signed signature cards for those accounts.

Over the years, Ella told William and his wife, Joanne, of the way she wanted to dispose of her property at death. Joanne noted Ella's wishes on paper as she and her husband planned to use the assets in the joint bank accounts to dispose of Ella's money according to her wishes at her death.

In the fall of 1987, Kaye Fabinak, William and Joanne Nadolske's daughter, learned that Ella had revised her will and she told her mother and father. William and Joanne Nadolske would later testify that they were unaware that Ella had a will until their daughter informed them.

In March 1988, Ella indicated that she wanted to change her will but she did not. According to William and Joanne Nadolske's later testimony, Ella told them that since she had not revised her will she wanted to write checks to the Nadolske family members. William discouraged Ella from writing the checks as he wanted Ella to maintain possession of her money in the event she needed it during her life. William Nadolske inquired at the bank about a method of investing in which Ella could transfer her money to her Nadolske relatives while retaining use of it during her lifetime. Bank personnel suggested to William that the money be placed in Guaranteed Investment Accounts ("GIAs"). In March 1988, William and Joanne went to the bank and picked up blank signature cards and forms needed to set up the GIAs.

Although bank personnel informed William that he could transfer funds from the joint accounts, he declined. Joanne filled out the forms and obtained signatures from her children, husband and herself. She then presented the signature cards to Ella, explained their purpose, and obtained her signature. Joanne presented the completed signature cards and forms to the bank. The bank withdrew approximately $49,000 from the joint accounts and transferred it into the GIAs. Joanne returned to Ella's home with green books evidencing the accounts on deposit. Joanne would testify later that after she explained the GIAs to Ella, Ella "really didn't understand it that much."

Ella was hospitalized on April 6, 1988. She remained in the hospital until she died on May 10, 1988, at age eighty-four years.

On October 25, 1988, Paul E. Pontius, executor of the estate of Ella A. Nadolske, filed a declaratory judgment action against Nadolske and National City Bank. The complaint alleged that William Nadolske and National City Bank withdrew the decedent's funds and placed them in newly created accounts to defeat the specific bequests set forth in Ella Nadolske's last will and testament, and that they refused to deliver the funds to Pontius as executor of the estate.

On April 14, 1989, after hearing several days of testimony, the trial court ruled that the bank accounts were assets of the estate.

Nadolske appeals.

### Assignments of Error

"I. The trial court erred in its judgment by not following the law in regard to joint and survivor accounts.

"II. The decision of the court was not supported by the evidence."

Nadolske argues two distinct assignments of error in one argument. Therefore, we will address both assignments of error together. As to National City Bank checking account 003099075 and savings account 0013099075, Nadolske contends that the trial court based its determination on testimony which concerned Ella's intentions at times other than the instances in which the accounts were created and therefore the evidence is not probative of Ella's intentions at the times the accounts were opened. As to the GIAs, Nadolske asserts that the evidence was sufficient to establish that Ella understood the survivorship component of the accounts and intended to create such interests.

The Ohio Supreme Court, in *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, determined the law in Ohio with respect to the ownership of funds in joint and survivorship accounts. In paragraph two of the syllabus, the court held:

"Sums remaining on deposit at the death of a party to a joint and survivorship account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.  * * * "

In order to create a true joint and survivorship account, the creator must intend to transfer a present interest as well as a survivorship interest in the account to the other party. *Id.* at 439, 20 O.O.3d at 375, 423 N.E.2d at 94. A party contesting the validity of a joint and survivorship account may overcome the presumption by showing the "realities of ownership." *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 231, 8 O.O.3d 198, 200, 375 N.E.2d 804, 807.  To overcome the presumption, the party may show either that no present interest was created in the joint tenant, or that no right of survivorship was intended. *Id.* at 233, 8 O.O.3d at 201, 375 N.E.2d at 807.  Evidence that during the creator's life he kept the passbook, and that even when in need the survivor borrowed from the creator rather than withdraw from the account rebuts the presumption of the right to survivorship. *In re Estate of Tyler* (1987), 42 Ohio App.3d 123, 124, 536 N.E.2d 1188, 1189.

In the present case, the record is replete with evidence that Ella did not intend to create a survivorship interest in Nadolske at the time the Nadolske names were placed on her accounts.  William Nadolske testified that he considered the money in the joint checking and savings accounts to be entirely Ella's at the time his name was added to the accounts and thereafter. Similarly, he testified that all the funds in the GIAs belonged to Ella to expend during her life.  Joanne Nadolske testified that she and her husband never intended to draw on any account on which Ella's name appeared, except at Ella's request.  Additionally, William Nadolske testified that neither he, his wife nor their children contributed to any bank account on which Ella's name appeared.  He testified that his name was added to the savings and checking account for Ella's convenience to assist her in paying her bills.  William and Joanne Nadolske testified that they wrote checks from the checking account only at Ella's request and on her behalf.

The trial court heard testimony from Anna Netting, Ella's friend of seventeen years, and Margaret Fuerst, Ella's friend of fifty-three years.  Netting testified that Ella told her that she was upset with William and Joanne because they frequently asked her for money and she felt that she had given them enough.  Netting also testified that Ella told her she planned to leave her house to William Nadolske and to dispose of the rest of her assets through her will.  Fuerst testified that Ella expressed concerns about William and Joanne Nadolske requesting money from her when she had already given

them enough. Fuerst testified that Ella expressed herself on the issue about every time they conversed, the last time being in March 1988.

Bernard Harris, the attorney who prepared Ella's 1986 and 1987 wills testified that Ella told him that she wished to leave only her house to William Nadolske and nothing more to him, his wife, their children or grandchildren. Harris testified that Ella wanted to leave the rest of her money to her nieces and nephews. He drafted the wills according to Ella's wishes and she executed them. The wills were entered into evidence.

As competent and credible evidence supports the judgment rendered by the trial court, this court may not substitute its judgment for the trial court's or reverse the judgment as being against the manifest weight of the evidence. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD and CIRIGLIANO, JJ., concur.