OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.  The
advance sheets to Ohio St.3d will also contain the volume and
page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Wright et al., Appellees, v. Bloom et al., Appellants.
[Cite as Wright v. Bloom (1994),    Ohio St.3d    .]
Probate -- Joint and survivorship accounts -- Survivorship rights
      to sums remaining on deposit at death of depositor not
      defeated by extrinsic evidence that decedent did not intend
      to create in surviving party a present interest in the
      account during decedent's lifetime -- Opening of account is
      conclusive evidence of intention to transfer to surviving
      party a survivorship interest in balance remaining in
      account at death -- Effect of opening joint account without
      survivorship provision.
                              - - -
1.  The survivorship rights under a joint and survivorship
      account of the co-party or co-parties to the sums
      remaining on deposit at the death of the depositor may not
      be defeated by extrinsic evidence that the decedent did not
      intend to create in such surviving party or parties a
      present interest in the account during the decedent's
      lifetime.
2.  The opening of a joint and survivorship account in the
      absence of fraud, duress, undue influence or lack of
      capacity on the part of the decedent is conclusive evidence
      of his or her intention to transfer to the surviving party
      or parties a survivorship interest in the balance remaining
      in the account at his or her death.  (In re Estate of
      Thompson [1981], 66 Ohio St.2d 433, 20 O.O.3d 371, 423
      N.E.2d 90, paragraph two of the syllabus, overruled.)
3.  The opening of a joint or alternative account without a
      provision for survivorship shall be conclusive evidence, in
      the absence of fraud or mistake, of the depositor's
      intention not to transfer a survivorship interest to the
      joint or alternative party or parties in the balance of
      funds contributed by such depositor remaining in the account
      at his or her death.  Such funds shall belong in such case
      exclusively to the depositor's estate, subject only to
      claims arising under other rules of law.  (Bauman v. Walter
      [1953], 160 Ohio St. 273, 52 O.O. 172, 116 N.E.2d 435,
      overruled in part).

(Nos. 93-640 and 93-735 -- Submitted April 20, 1994 -- Decided July 20, 1994.)

Appeal from and Certified by the Court of Appeals for Summit County, No. 15665.

This is an action to determine the disposition of the money remaining in three joint accounts following the death of the depositor.

William C. Bloom died testate on August 30, 1983. Prior to his death, William transferred his personal bank and credit union accounts into three joint accounts with his brother, appellant Raymond Bloom. The signature cards on two of the accounts recited that the account is owned jointly, or payable to either, with rights of survivorship. The signature card on the third account, with TransOhio Savings Bank, indicates only that it is governed by "Account Rules and Regulations," which were not made part of the record.

In his last will and testament, William bequeathed specific sums of money to each appellee--Louise Wright, Gary Wright and William Evans. Raymond was appointed executor of his deceased brother's estate. The three accounts were not included in the inventory of the estate; the money from one of the accounts was transferred into a joint and survivorship account in the names of Raymond and his wife, appellant Gloria Bloom. There were insufficient estate assets with which to satisfy the specific monetary bequests to appellees.

On June 5, 1991, appellees filed a complaint for declaratory judgment in the Summit County Court of Common Pleas, Probate Division. The complaint sought a determination that the funds remaining in the three joint accounts at William's death belonged to his estate. Thereafter, appellees filed a motion for summary judgment. They argued that the "joint accounts were created as a matter of convenience in handling William Bloom's business affairs; that Raymond Bloom did not contribute any of his own funds to the accounts, and was forbidden from taking any funds out of the accounts for his own use; that William Bloom retained possession of the passbooks for the accounts until his death; and that Raymond's interest in the accounts did not vest until the death of William C. Bloom. Thus, it is clear that William C. Bloom did not intend to create a present, vested interest in the joint accounts in Raymond Bloom at the time the joint accounts were opened. Therefore, *** the funds comprising the joint accounts are properly assets of The Estate of William C. Bloom and should be included in the inventory of said Estate."

The probate court granted appellees' motion for summary judgment, finding that where "a survivorship interest has been demonstrated but no present interest has been shown, the estate, as a matter of law, is entitled to proceeds of a joint and survivorship account."

The court of appeals affirmed the judgment of the probate court. The court found that although William and Raymond Bloom established "joint *** accounts with the right of survivorship in Raymond's name *** there was clear and convincing evidence that William had no intent to transfer a present interest in the funds to Raymond." The cause is now before this court pursuant to the allowance of a motion to certify the record. (Case No. 93-640.) In a subsequent journal entry, the court of appeals certified the record in this case to this court pursuant to Section 3(B)(4),

Article IV of the Ohio Constitution for review and final determination, finding that its decision was in conflict with that pronounced by the Eighth District Court of Appeals in Corrigan v. Coughlin (1983), 11 Ohio App.3d 176, 11 OBR 268, 463 N.E.2d 1258. (Case No. 93-735.)

Young & McDowall, Dean A. Young and Laura K. McDowall, for appellants.
L. James Harkins, for appellees.

Alice Robie Resnick, J. The question certified "is whether the creator of a joint and survivor account must intend to transfer a present interest as well as a survivorship interest in the account to the other party named on the account."
The question certified is a facet of a broader issue which this court has endeavored to resolve since the early part of this century: How to stabilize the relationships of parties to joint and survivorship accounts. The joint and survivorship account is generally utilized by owners of choses in action either for financial convenience during their lives or as a non-probate device to dispose of their property at death while retaining some measure of control during their lives. Over the years, the court has sought to provide a clear statement as to the formal requisites and concomitant legal ramifications of opening a joint and survivorship account, particularly in regard to survivorship rights. Recent cases have created a morass of unpredictability, often occasioned by ambiguous and conflicting results. Presently, the depositor cannot rest assured as to whether the funds remaining in the account at his death will immediately pass to the survivor. Identical survivorship language expressly set forth in one joint and survivorship account agreement may be adjudged sufficient to pass ownership to the survivor while found to be insufficient in another. This has led to resolution of this issue on a case-by-case basis involving protracted litigation, time, and great expense.
This court first recognized the validity of the joint and survivorship account in Cleveland Trust Co. v. Scobie (1926), 114 Ohio St. 241, 151 N.E. 373. It was explained that "[v]iewing the transaction as a testamentary disposition, it of course lacks the requisites of a valid will; and viewing it as a gift, it may be questioned whether the delivery essential to constitute a completed gift was present." Id. at 246, 151 N.E. at 375. The court elected to give legal identity to such an account on the basis of contract law principles.
"*** [U]pon deposit of an account the bank is constituted a debtor, and when the depositor orders the bank to pay himself or another upon order of either party, notifies the second party of the completed transaction and secures her signature evidencing assent to the arrangement, he has created in the second party by contract a joint interest in his right to the deposit equal to his own." Id. at 253, 151 N.E. at 377.
Under this view, the determinative question "is not whether [the depositor] made a gift of the fund in specie, but whether he created in [the other party] a joint interest in the deposit equal to his own." Id. at 247, 151 N.E. at 375.
Such an interest was created by the account notwithstanding "that withdrawals and deposits were made only by the [depositor],

and no deposits or withdrawals whatever were made by [the other party] during [the depositor's] life. In other words [the depositor] exercised control of the account up to the time of his death." Id. It was found that a joint equal interest was created by virtue of the fact that the account agreement authorizes the other party to "withdraw all or any part of the funds upon deposit at any time during [the depositor's] life." Id. at 248, 151 N.E. at 375. Thus, the depositor had created by contract a present joint interest in the other party equal to his own, notwithstanding that full enjoyment of the account funds were postponed until the depositor's death. Id. at 248, 251, 151 N.E. at 375, 376.

The question that remained after Scobie was whether the opening of the account in joint and survivorship form would be conclusive as to the rights of the surviving party to the balance of the funds remaining in the account upon the death of the depositor. The court held that in order for the surviving party to be entitled to the balance of the account upon the death of the depositor, the record must show "that the depositor intended to transfer to the person to whom he made the account jointly payable a present joint interest therein equal to his own." Id. at syllabus. It was unclear, however, what role, if any, the introduction of evidence extrinsic to the contract would play in determining the depositor's intent.

Subsequent to Scobie, the court continued to identify joint and survivorship accounts as contractual in nature. Our earlier cases recognized that upon the opening of such an account, the right of survivorship vests in the joint parties by virtue of contract and, when the creator dies, the surviving party or parties have a right to the balance remaining in the account to the exclusion of the decedent's estate. Sage v. Flueck (1937), 132 Ohio St. 377, 7 N.E. 2d 802, paragraphs one and three of the syllabus. Such right, arising as it does by virtue of contract, could not be defeated by extrinsic evidence that the depositor's intent was other than clearly expressed in the account contract or signature card. Id. at 383, 7 N.E.2d at 805; Oleff v. Hodapp (1935), 129 Ohio St. 432, 438, 2 O.O. 409, 412, 195 N.E. 838, 841. Further, the right of the surviving party to the funds remaining on deposit at the death of the depositor was not predicated on his having been a signatory to the account agreement. Rhorbacker v. Citizens Bldg. Assn. Co. (1941), 138 Ohio St. 273, 20 O.O. 336, 34 N.E.2d 751.

This court has carefully distinguished two situations in which extrinsic evidence could play a part in determining creator intent. The first situation involved controversies inter vivos. In Union Properties, Inc. v. Cleveland Trust Co. (1949), 152 Ohio St. 430, 434-435, 40 O.O. 425, 427-428, 89 N.E.2d 638, 641, it was explained that "in controversies *** involving the deposit and arising during the joint lives of the depositors, the form of the deposit should not be treated as conclusive on the subject of joint ownership and the door should be opened to evidence that the deposit was in truth made and maintained on a different basis. In other words, the 'realities of ownership' may be shown."

The second situation involved survivorship disputes over funds remaining in an account that was opened without survivorship language. In Bauman v. Walter (1953), 160 Ohio St.

273, 52 O.O. 172, 116 N.E. 2d 435, it was held that upon the death of the creator of such an account, the surviving party had no right to any part of the funds remaining on deposit "where there is no evidence that any passbook for the deposit had been delivered to the surviving party with intent to pass title to the deposit." Id. at syllabus. In so holding, it was found that an "either *** or" or "alternative" account, without survivorship language, is ambiguous with regard to whether the surviving party or the decedent's estate is entitled to the remaining funds. We carefully distinguished such accounts from the joint and survivorship account which "could, on the death of one of the two alternative obligees, be only a contract to pay the surviving obligee. Without disregarding the words of the contract, [the joint and survivorship account] could not possibly be construed as a contract to pay either the surviving obligee or the personal representative of the deceased obligee." (Emphasis added.) Id. at 277, 52 O.O. at 174, 116 N.E.2d at 438.

At this juncture, we had clearly recognized the joint and survivorship account as a viable non-probate mechanism by which a person may transfer property at death without having to give it away during his lifetime. By applying the parol evidence rule in post-mortem controversies, we made the opening of the account in joint and survivorship form conclusive of survivorship rights. The depositor, therefore, could rest assured that the funds remaining in the account would, upon his death, immediately pass to the surviving party to the exclusion of his personal representative.

In our later cases, however, we changed course regarding the role that evidence extrinsic to the account terms would play in determining survivorship rights under a joint and survivorship account. In Fecteau v. Cleveland Trust Co. (1960), 171 Ohio St. 121, 12 O.O.2d 139, 167 N.E.2d 891, at paragraph three of the syllabus, we held that the opening of a joint and survivorship account "is not always conclusive as to the ownership of such account, and, where a controversy arises as to the ownership of the account, evidence is admissible in a proper case to show the true situation." Since Fecteau involved a situation where the money was withdrawn from the bank account prior to the death of the depositor, it was unclear whether its holding extended to controversies arising subsequent to the death of the depositor. In In re Estate of Svab (1967), 11 Ohio St.2d 182, 40 O.O.2d 166, 228 N.E.2d 609, however, we merged the treatment of controversies inter vivos and those arising after the depositor's death, and concluded that "[w]hen the exceptions to the inventory were filed a controversy arose and it became necessary that evidence be submitted to the court to establish the 'realities of ownership.'" Id. at 184, 40 O.O.2d at 168, 228 N.E.2d at 611.

In Svab, we also placed the burden on the surviving party, who instituted the action by filing exceptions to the inclusion of the account funds in the inventory of the estate, to "show that the decedent intended to transfer an interest in the accounts to her." The court held further that "the bank signature cards by themselves do not constitute enough evidence of [such] an intention." Id. at 185, 40 O.O.2d at 168, 228 N.E.2d at 611. Following Svab, however, in a trilogy of cases it was held that the surviving party is benefited by a rebuttable presumption, raised by the terms of the account contract, that

the depositor intended to transfer a present, equal interest in the account; and in the absence of any evidence, this presumption was sufficient to establish the survivor as the absolute owner of the account at the depositor's death.  Moreover, the depositor's estate could rebut the presumption with evidence showing that the realities of ownership are such that no present interest was created or that no right of survivorship was intended.  In re Estate of Duiguid (1970), 24 Ohio St.2d 137, 53 O.O.2d 328, 265 N.E.2d 287; Steinhauser v. Repko (1972), 30 Ohio St.2d 262, 59 O.O.2d 334, 285 N.E.2d 55; Vetter v. Hampton (1978), 54 Ohio St.2d 227, 8 O.O.3d 198, 375 N.E.2d 804.

Then, in In re Estate of Thompson (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, syllabus, we changed the burdens and presumptions as follows:

"1.  A joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

"2.  Sums remaining on deposit at the death of a party to a joint and survivorship account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. ***"

In creating these new presumptions, we adopted Sections 6-103(a) and 6-104(a) of the Uniform Probate Code.  Id. at 438-439, 20 O.O.3d at 374-375, 423 N.E.2d at 94.  The Comments to these sections reveal that the collective assumption underlying these presumptions is that the average depositor utilizes the joint and survivorship account as a non-probate device to dispose of his property at death while retaining control over such property during his lifetime.  8 U.L.A., Uniform Probate Code (1983), at 524, 526.

Recognizing that "[u]nder a strict contractual analysis, he [the depositor] could not do both," id. at 436, 20 O.O.3d at 373, 423 N.E.2d at 93, the court sought a way around "the rigid contractual analysis of our earlier cases."  Id. at 437, 20 O.O.3d at 374, 423 N.E.2d at 93.  This was accomplished by reversing the court's previous position that the bank protection statutes were enacted solely for the benefit and protection of financial institutions.  The court then held that these statutes "implicitly permi[t] use of such accounts to transfer property at death even though such transfers are not pursuant to a testamentary disposition."  Id.

The court adopted the presumptions embodied in the Uniform Probate Code over the previous presumptions because earlier case law "failed to distinguish between the treatment of such accounts during the parties' lifetimes and the treatment of such accounts after the death of a party ***."  Id. at 438, 20 O.O.3d at 374, 423 N.E.2d at 94.  Instead of returning to the previous inter vivos/survivorship dichotomy, under which extrinsic evidence was admissible in controversies arising during the joint lives of the parties but not in survivorship cases, separate rebuttable presumptions were created.  Yet, in illustrating how those presumptions would apply, again the court merged the treatment of such accounts.  The court indicated that in cases involving the right of survivorship, it is "essentially in accord with creator intent and the Uniform Probate Code [to require] an intent to

transfer a present interest, as well as a survivorship interest. *** [E]vidence of the 'realities of ownership' can be used to rebut the presumption of survivorship which we have adopted from Section 6-104(a) of the Uniform Probate Code and of course would buttress the [ownership during lifetime] presumption adopted from Section 6-103(a)."  Id. at 439, 20 O.O.3d at 375, 423 N.E.2d at 95.

It is not surprising, therefore, that following Thompson, courts of appeals disagreed on whether survivorship rights could be defeated by evidence that the depositor intended not to create a present interest in the co-party to the joint and survivorship account.  See Corrigan, supra (overruling assignment of error based on the argument that there must be a present vested interest in the survivor).  See, also, Pontius v. Nadolske (1989), 65 Ohio App.3d 522, 584 N.E.2d 1228 (holding that the estate may overcome survivorship presumption by showing that no present interest was created).

The question certified in the case sub judice, properly construed under Thompson, is whether the rights of a surviving party to the funds remaining in a joint and survivorship account at the depositor's death can be defeated by evidence, extrinsic to the account contract, that the depositor did not intend to create the surviving party a present interest in the account.  We answer this question in the negative, and find the depositor's intent to transfer a present interest in a joint and survivorship account to be irrelevant in a controversy involving the rights of a surviving party to the sums remaining in such account at the death of the depositor.

We hold that survivorship rights under a joint and survivorship account of the co-party or co-parties to the sums remaining on deposit at the death of the depositor may not be defeated by extrinsic evidence that the decedent did not intend to create in such surviving party or parties a present interest in the account during the decedent's lifetime.

To hold otherwise would defeat the assumptions that underlie Sections 6-103(a) and 6-104(a) of the Uniform Probate Code, and render the presumptions created thereby internally inconsistent. The presumption of ownership during lifetime serves to establish the depositor's intention to retain control over the funds he or she deposits in a joint and survivorship account. Yet, despite this fact, the survivorship presumption serves to establish the surviving party's right to the sums remaining on deposit at the depositor's death as against the estate of the depositor.  Thus, the presumptions are designed to enforce the rights of the survivor while at the same time allowing the depositor to retain control over the account during his or her lifetime.  It is inconsistent with this design to allow the surviving party's rights to be defeated by the very same evidence of depositor control that is assumed in the lifetime presumption.  Further, this comports with our statement in Cork v. Bray (1990), 52 Ohio St.3d 35, 38, 555 N.E.2d 936, 939, that "[i]n the present [survivorship] case, the only issue is whether appellant met her burden by presenting clear and convincing evidence that [the depositor] did not intend to leave the account funds to the named survivor *** but instead opened the account solely for her convenience, intending the funds to remain in her estate at her death."  (Emphasis added.)

This holding by itself, however, would do little to ensure predictability of survivorship rights under a joint and survivorship contract. An examination of the foregoing cases reveals that the same evidence that was used prior to Thompson to establish the necessary incidence of control to defeat the presumption of a present, equal interest, would also be used to establish a showing of convenience to defeat the presumption of survivorship rights. There is no cogent distinction between an account created for the purpose of aiding the depositor who suffers from bad vision, which led to the defeat of survivorship rights in Svab, supra, and one created to aid the depositor who suffers from an injury, which led to a finding that there was no intent to transfer a present, equal interest in Union Properties, supra. See, also, Thompson, supra, at 439, 20 O.O.3d at 375, 423 N.E.2d at 95; Cork, supra, at 38, 555 N.E.2d at 939. Thus, if in determining survivorship rights, we were to eliminate the use of extrinsic evidence regarding the intent of the depositor to create a present interest, but retain its use to determine intent with regard to the transfer of a survivorship interest, we would still be making the same evaluations.

If there is one thing that is clear from reviewing the foregoing cases, it is that our efforts to determine survivorship rights by a post-mortem evaluation of extrinsic evidence of depositor intent are flawed to the point of offering no predictability. Regardless of the depositor's true motivation in opening a joint and survivorship account, he or she simply cannot be certain of how his or her lifetime actions will be construed in regard to transferring survivorship rights. Only when the depositor knows that the terms of the contract will be conclusive of his or her intent to transfer a survivorship interest, will the depositor be able to make an informed choice as to whether to utilize the joint and survivorship account.

Other jurisdictions faced with providing a legal identity for the joint and survivorship account have faced many of the same metamorphic disturbances that we have faced. Those without specific statutes have endeavored to fit the transaction into a number of accepted common-law techniques for transferring property. In much the same way as trying to fit a round peg into a square hole, courts have utilized theories of gift, contract, trust, and joint tenancies. Those with bank protection statutes have oscillated between construing them to have been enacted solely for the bank's protection or effecting the rights of the parties to a joint and survivorship account. Those with special statutes have held the rights of parties to range from presumptively established to conclusively established. Slowly and unevenly, through various gradations of evolution, courts have moved toward the inevitable realization that the joint and survivorship bank account has its own identity unconforming to any hitherto recognized common-law methods of transferring property. Kepner, The Joint and Survivorship Bank Account--A Concept Without a Name (1953), 41 Cal.L.Rev. 596; Kepner, Five More Years of the Joint Bank Account Muddle (1959), 26 U.Chi. L.Rev. 376, Comment, The Validity of Joint Tenancy Bank Accounts as Non-Probate Devices (1989), 17 Capital U.L.Rev. 571; Annotation, Creation of Joint Savings Account or Savings Certificate as Gift to Survivor (1972), 43 A.L.R.3d 971.

The need for uniformity is essential. "A depositor who

opens such an account ought to be able to know, with some degree of certainty, that certain consequences will arise from the creation of the account in an established manner." Kepner, The Joint and Survivorship Bank Account, supra, at 635. Since "'[s]urvivorship is the distinctive characteristic and the grand incidence of'" a joint and survivorship account, Eastman v. Mendrick (1975), 218 Kan. 78, 82, 542 P.2d 347, 350, quoting Johnson v. Capitol Fed. S. & L. Assn. (1974), 215 Kan. 286, 524 P.2d 1127, paragraph three of the syllabus, it is imperative that the depositor know that the opening of such an account is conclusive of his intent to transfer a survivorship interest.

In reaching this conclusion, we are not unmindful of our previous position that it is necessary to retain the presumption of survivorship in rebuttable form because such "accounts are not necessarily the most desirable means of effectuating intent." Thompson, supra, at 437, 20 O.O.3d at 374, 423 N.E.2d at 94. This position is based on the recognition that "'[t]hese accounts are frequently litigated. *** All too frequently, the parties *** are not really apprised of all the ramifications that exist when such a contract is consummated. *** Thus, the end result in numerous instances, is a defective estate plan that successfully avoids probate at the cost of litigation, great expense, disruption of the deceased's intention and hardship to his family.'" (Emphasis sic.) Id. at 437-438, 20 O.O.3d at 374, 423 N.E.2d at 94, quoting Vetter, supra, at 233-234, 8 O.O.3d at 202, 375 N.E.2d at 808, Locher, J., concurring.

This argument, however, serves to perpetuate uncertainty and confusion where uniformity is needed. The uncertainty exists by virtue of the fact that the joint and survivorship account is utilized to achieve antithetical results with regard to survivorship rights. In other words, these accounts are opened by depositors who do not intend to bestow the right of survivorship on the surviving party, as well as by depositors who do intend to bestow such right of survivorship. Permitting the use of extrinsic evidence to show the true intent of the creator, however, serves only to perpetuate this confusion. It sanctions the use of joint and survivorship accounts by those who do not intend to transfer survivorship rights, thus encouraging the very evils of misinformation and litigation sought to be avoided. On the other hand, were the creation of such an account to be conclusive of survivorship rights, there would be no need to go beyond the account contract to ascertain the creator's intent. Those who desired to open an account for convenience only, without survivorship rights, would be forced to abandon consideration of the joint and survivorship account.

Such conclusiveness has been accomplished in other jurisdictions in a variety of ways depending on the theory utilized. Those jurisdictions utilizing the contract theory have applied the parol evidence rule to make the form of the account conclusive of survivorship rights, in the absence of fraud, duress, undue influence and incapacity. See Estate of Haynes v. Brayden (Tenn.App.1992), 835 S.W.2d 19; Robison v. Fickle (1976), 167 Ind.App. 651, 340 N.E.2d 824; Estate of Harvey v. Huffer (1955), 125 Ind.App. 478, 126 N.E.2d 784; Connor v. Temm (Mo.App.1954), 270 S.W.2d 541. See, also, Annotation, Parol Evidence Rule as Applied to Deposit of Funds in Name of Depositor and Another (1954), 33 A.L.R.2d 569, and (1989) Later Case

Service 235; Comment, The Validity of Joint Tenancy Bank Accounts as Non-Probate Devices, supra, at 586, fn. 118; Kepner, The Joint and Survivorship Bank Account, supra, at 620, fn. 144.

Under the gift theory, conclusiveness is accomplished under the following rationale:

"It would seem that when a depositor opens a joint and survivorship account and executes signature cards which recite that the account is to be paid to either during the depositors' joint lives and to the survivor upon the death of either, a rebuttable presumption of an intent to make a gift of a joint interest should arise. After the depositor's death only evidence of fraud, undue influence or lack of capacity should be admissible to rebut the presumption. It serves no useful social purpose to encourage litigation concerning the disposition of the balance of the joint account upon the death of the depositor, when in most instances he intended, in his unlearned manner, to make a testamentary disposition of his property. If the joint and survivorship account is sound, as a means of transferring property, it should be uniformly administered." Kepner, The Joint and Surviorship Bank Account, supra, at 621. See, also, Connor, supra.

Other courts have interpreted the specific statutes enacted in their respective jurisdictions to provide that the opening of an account in joint and survivorship form is conclusive of the rights of the surviving party to funds remaining in the account upon the death of the depositor. See Doty v. Anderson (1977), 17 Wash.App. 464, 563 P.2d 1307; In re Wszolek Estate (1972), 112 N.H. 310, 295 A.2d 444; Miller v. Roseberry (1958), 120 Vt. 498, 144 A.2d 836; Estate of Green v. Meeker (1955), 46 Wash.2d 637, 283 P.2d 989.

In Kansas, a unique approach is taken, which its courts have dubbed the "magic words" doctrine. Under this approach, if the joint and survivorship agreement recites the "magic" words "as joint tenants with right of survivorship, and not as tenants in common," then a joint tenancy with the incidents of survivorship is conclusively established. If those words are not recited, then the contract is deemed ambiguous and extrinsic evidence of depositor intent is admissible. The words are garnered from the joint tenancy statute enacted in that state. Kansas also has a banking statute which provides for accounts "payable to either or any of the survivors." K.S.A. 9-1205. This statute has been construed to be for the bank's protection only. Thus, the words identified therein are not "magic." Jeschke v. United States (C.A.10, 1987), 814 F.2d 568, 575; In re Estate of Wood (1976), 218 Kan. 630, 545 P.2d 307; Eastman v. Mendrick, supra; Agrelius v. Mohesky (1972), 208 Kan. 790, 494 P.2d 1095.

"The theory used to describe the transaction, whether it be denominated joint tenancy, contract or gift, is meaningful only for the purpose of defining the method of effectuating the donation." Kepner, The Joint and Survivorship Bank Account, supra, at 613. Since in Thompson, supra, at 437, 20 O.O.3d at 374, 423 N.E.2d at 93, we held that our banking statutes "implicitly permi[t] use of such accounts to transfer property at death even though such transfers are not pursuant to a testamentary disposition," there is no longer any need to denominate the theory upon which the joint and survivorship account is effectuated in common-law terms. Nevertheless, our

own history has left us best acquainted with the utilization of contract principles.

We hold that the opening of an account in joint and survivorship form shall, in the absence of fraud, duress, undue influence or lack of mental capacity on the part of the depositor, be conclusive evidence of the depositor's intention to transfer to the survivor the balance remaining in the account at the depositor's death. (Thompson, supra, paragraph two of the syllabus, overruled.)

On the other hand, in order to maintain consistency in the treatment of survivorship rights, we hold that the opening of the account in joint or alternative form without a provision for survivorship shall be conclusive evidence, in the absence of fraud or mistake, of the depositor's intention not to transfer a survivorship interest to the joint party in the balance of funds contributed by the depositor remaining in the account at the depositor's death. Such funds shall belong exclusively to the depositor's estate, subject only to claims arising under other rules of law. (Bauman, supra, overruled in part.)

We stress, however, that today's decision does not change the ownership-during-lifetime presumption set forth in Thompson, supra, at paragraph one of the syllabus, utilized in determining the rights of the parties and others to joint and survivorship funds in controversies arising during the parties' lifetimes.

Applying today's holdings to the record in this case, we reverse the decision of the court of appeals and find that the two accounts containing survivorship language conclusively establish Raymond Bloom's rights to the balance remaining in those accounts at the death of his brother, William Bloom. As to the third account, that opened with TransOhio Savings Bank, the decision of the court of appeals is reversed and the cause is remanded to the probate court to determine the existence of survivorship language in conjunction with this account, and enter judgment consistent with this opinion.

> Judgment reversed
> and cause remanded.

Moyer, C.J., Douglas, Wright, F.E. Sweeney and Pfeifer, JJ., concur.

A.W. Sweeney, J., dissents.