OPINION
{¶ 1} Appellant, Allyson Torres, appeals from a Mahoning County Probate Court judgment removing her as executrix of Beverly Lindsay's estate and denying her requested reimbursement from the estate.
 {¶ 2} Ms. Lindsay died testate on February 4, 2002. She devised her property as follows: 25 percent to her sister, Blodwyn Decker; 25 percent to her sister, Pauline Starr; and 50 percent to appellant as trustee. As trustee, appellant was to administer the trust assets for the benefit of Ms. Lindsay's grand-nephew, Justin White, for his education until he reaches age 25. When Justin reaches age 25, whatever money remains in the trust is to be distributed evenly among all of Ms. Lindsay's nieces and nephews. Appellant is Justin's mother and Ms. Lindsay's niece. The will also named appellant as the executrix.
 {¶ 3} Appellant filed Ms. Lindsay's will with the probate court on September 9, 2002, along with her application to probate the will. The court subsequently appointed appellant as the fiduciary. On February 10, 2003, the court issued a citation upon delinquent inventory and ordered appellant to appear and show cause. Appellant then filed an inventory and appraisal, which the court approved at that time. The inventory listed the estate's assets as $11,964.43. Appellant later filed an amended inventory listing the total estate assets at $45,357.18, which the court approved at the time. In this inventory, appellant listed $9,205.19 as "[c]ash advanced for which reimbursement is sought." However, she listed it as an asset of the estate. Appellant later stated that this was her request for reimbursement of funds she alleged were her own that she used to pay Ms. Lindsay's funeral and other expenses. Appellant next filed a first partial account, which the court approved at that time.
 {¶ 4} On August 3, 2004, a magistrate issued a decision on the first partial account. The magistrate stated that Attorney Andy Bresko indicated to him that he had received repeated requests for distributions of estate assets by Ms. Lindsay's two sisters who were named beneficiaries. Attorney Bresko indicated that he had made numerous attempts to contact appellant, but she did not respond. The magistrate stated that this failure to respond raised serious suspicion. Based on this suspicion, the court contacted Sky Bank, where the fiduciary account was held. A preliminary inquiry revealed zero assets in the fiduciary account. The first partial account listed a balance in excess of $35,000. Upon the magistrate's recommendation, the probate court issued an order to appellant to appear and show cause upon removal.
 {¶ 5} The court held a hearing on the matter where it heard appellant's testimony. Appellant also offered a second partial account that reflected a $9,205.16 distribution to her for reimbursement for funds advanced to the estate. Appellant stated that she believed that Ms. Lindsay's checking account, which also had appellant's name on it, became her property upon Ms. Lindsay's death. She stated that she spent the money in that account on her personal needs. She also stated that she took the $9,205.16, for which she sought reimbursement from the estate, from this checking account. However, she believed this to be her money, not the estate's money.
 {¶ 6} The court found that Ms. Lindsay clearly emphasized in her will that her survivorship accounts and life insurance proceeds were to be counted as part of the residuary of her estate and used to satisfy all debts without any right of appellant to seek reimbursement. It also found that appellant failed to produce any evidence that the account in question was a joint and survivorship account. Finally, the court found that appellant failed to seek reimbursement of the $9,205.16 from the court and simply took matter into her own hands. Thus, the court concluded that appellant breached her fiduciary duties as executrix.
 {¶ 7} The court then rejected the inventories previously approved. It vacated its prior approval of the first partial account and rejected the second partial account. It removed appellant as executrix and appointed a new administrator. It denied appellant fees, denied her reimbursement, and ordered her to pay back the reimbursement she took from the estate. Finally, the court referred the matter to the Boardman Police Department for an investigation into whether there was theft from the estate.
 {¶ 8} Appellant filed a timely notice of appeal on November 23, 2004.
 {¶ 9} Appellant raises three assignments of error, the first of which states:
 {¶ 10} "THE TRIAL COURT ERRED IN FINDING THAT ACCOUNT NUMBER 006846089 WAS AN ASSET OF THE ESTATE."
 {¶ 11} Appellant argues that she was unprepared to present evidence on the issue of whether the checking account in question was a joint and survivorship account because the court did not give her notice that this issue would be addressed at the hearing. She further argues that since she testified that the account was a joint and survivorship account, this was sufficient evidence to support this fact. Additionally, appellant argues that the court erred in considering the will's language in determining the nature of the account since the will was extrinsic evidence.
 {¶ 12} First, it should be noted that, as appellee, successor administrator Mark Belinky, points out, appellant failed to raise the issue of lack of notice in the probate court. Thus, she has waived this argument on appeal.
 {¶ 13} A reviewing court will not disturb the findings of the probate court absent a showing of an abuse of discretion. In re Bird, 8th Dist. No. 85130, 2005-Ohio-2186, at ¶ 8. Abuse of discretion connotes more than an error of law or fact; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 14} The Ohio Supreme Court has held:
 {¶ 15} "The opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death.
 {¶ 16} "The opening of a joint or alternative account without a provision for survivorship shall be conclusive evidence, in the absence of fraud or mistake, of the depositor's intention not to transfer a survivorship interest to the joint or alternative party or parties in the balance of funds contributed by such depositor remaining in the account at his or her death. Such funds shall belong in such case exclusively to the depositor's estate, subject only to claims arising under other rules of law." Wright v. Bloom (1994), 69 Ohio St.3d 596, 635 N.E.2d 31, at paragraphs two and three of the syllabus.
 {¶ 17} Thus, we must determine whether the checking account in question was a joint and survivorship account or a joint or alternative account. There is not much evidence on this issue in the record.
 {¶ 18} Appellant submitted copies of cancelled checks she wrote from the account to pay for funeral expenses. The checks list Ms. Lindsay and appellant on the upper left-hand corner. Other than that, there is no indication of what type of account the checks were a part of.
 {¶ 19} Additionally, appellant testified vaguely about the checking account. Initially, she refused to testify on the subject, pleading the Fifth Amendment. (Tr. 1967). Her testimony on the subject when questioned by the court was as follows:
 {¶ 20} "Q So you are telling me that as of Beverly's date of death, February 4th, 2002, she had in excess of $10,000 in her joint checking account with you?
 {¶ 21} "A Yes, sir.
 {¶ 22} "Q You didn't deposit any funds?
 {¶ 23} "A No, sir. I was told by Attorney Bresko's office not to deposit anything else into the account.
 {¶ 24} "Q That was all [sic.] money she already had in there?
 {¶ 25} "A Yes, sir.
 {¶ 26} "Q Her money?
 {¶ 27} "A Yes, sir.
 {¶ 28} "Q So you paid her bills with her money?
 {¶ 29} "A I was told by Attorney Robinson that at the time of her death that account rolled over into my name.
 {¶ 30} "Q How long has your name been on this account?
 {¶ 31} "A At least 15 years.
 {¶ 32} "Q You never deposited any sums into that account?
 {¶ 33} "A No, sir, not unless she asked me to if it was her moneys, if she asked me to go to the bank for her or something like that but no.
 {¶ 34} "Q As of the date of her death, she had more than $10,000 in that account?
 {¶ 35} "A Yes, sir.
 {¶ 36} "Q That she had deposited?
 {¶ 37} "A Yes, sir.
 {¶ 38} "Q You wrote checks on money she had deposited to pay those bills?
 {¶ 39} "A Yes, sir.
 {¶ 40} "Q And now you want to claim reimbursement of those funds?
 {¶ 41} "A Yes, sir.
 {¶ 42} "Q Does that make sense?
 {¶ 43} "A Yes, sir. Legally, I was told that at the time of her death the joint account became mine and that's what I was supposed to do." (Tr. 1985-1981).
 {¶ 44} And when her counsel questioned her, appellant testified as follows:
 {¶ 45} "Q This is an account that your aunt had with your name on it for several years?
 {¶ 46} "A Yes, that's correct.
 {¶ 47} "Q And would this be typified as a joint account that you had with your aunt?
 {¶ 48} "A Yes, sir.
 {¶ 49} "Q When this account was established, did you go with your aunt or did your aunt bring you a signature cards [sic.]?
 {¶ 50} "A That's correct.
 {¶ 51} "Q You indicate that when you discussed this with Attorney Robinson he indicated to you that how did your aunt's death affect the assets that were in that account?
 {¶ 52} "A At that point they became my assets.
 {¶ 53} "Q So when you made withdrawals and expenditures out of that account, you felt that you were entitled to reimbursement for those?
 {¶ 54} "A That is correct." (Tr. 1993).
 {¶ 55} At no point did appellant specifically testify that the account was a joint and survivorship account. She testified that the account was a joint account. But a joint account does not necessarily have survivorship rights. Furthermore, although her testimony indicated that an Attorney Robinson told her the money in the account belonged to her upon Ms. Lindsay's death, implying a joint and survivorship account, appellant provided no independent assertions that the account was in fact a joint and survivorship account. She did not testify that she remembered the account as such or that Ms. Lindsay expressed such an intent. Most importantly, she did not present any evidence of the account identifying what type of account it was.
 {¶ 56} The probate court also considered the will in determining the nature of the account. It provides:
 {¶ 57} "I direct that my enforceable debts, funeral expenses and estate taxes, both state and federal, levied or assessed by reason of my death, including non-probate assets such as survivorship accounts, or proceeds of policies of insurance on my life, be paid by the fiduciary of my estate from my residuary estate without any rights or duties on the said fiduciary to seek or obtain contribution or reimbursement of any person or property."
 {¶ 58} Ironically, appellant argues that the probate court erred in considering Ms. Lindsay's will as extrinsic evidence of her intent regarding the account. Appellant fails to realize that her testimony regarding the character of the account was also extrinsic evidence. Appellant never produced a signature card or other bank document to establish the nature of the account. Thus, the court did not err in considering the will as evidence of Ms. Lindsay's intent.
 {¶ 59} Furthermore, given the fact that appellant could not testify as to Ms. Lindsay's intent and given the fact that the will seems to direct appellant to use the account money to pay Ms. Lindsay's funeral expenses and debts without any rights to reimbursement, we cannot conclude that the probate court abused its discretion in determining that the checking account was an asset of the estate.
 {¶ 60} Accordingly, appellant's first assignment of error is without merit.
 {¶ 61} Appellant's second assignment of error states:
 {¶ 62} "THE TRIAL COURT ERRED IN DENYING APPELLANT REIMBURSEMENT OF EXPENSES IN THE AMOUNT OF $9,205.16."
 {¶ 63} Here appellant contends that both her inventory and amended inventory listed her expenditures and requested reimbursement. Both of those inventories were initially approved. Therefore, appellant argues, the court erred in later denying her reimbursement. She asserts that there is no requirement that a formal, written application be made to the probate court to request reimbursement. Appellant further argues that the court only vacated the prior approvals of the inventories based on its mischaracterization of the checking account. Finally, appellant asserts that she made a mistake in the inventories she filed by erroneously listing the $9,205 as assets instead of expenditures. She states that she was attempting to put the court on notice of the expenditures. Appellant claims that instead of correcting this accounting mistake, the court erred by putting the burden on her to account for funds which were never in her hands.
 {¶ 64} R.C. 2117.02 provides, in pertinent part:
 {¶ 65} "An executor or administrator within three months after the date of his appointment shall present any claim he has against the estate to the probate court for allowance. The claim shall not be paid unless allowed by the court."
 {¶ 66} R.C. 2117.02's time limit is mandatory, and constitutes a statute of limitations. In re Estate of Waterman, 2d Dist. No. 2002-CA-28, 2003-Ohio-3406, at ¶ 7.
 {¶ 67} Appellant submitted cancelled checks and receipts for the expenses for which she sought reimbursement. The items were as follows: funeral home, $7,948.43; Liberty Township Trustees for the burial plot, $350; Burkland Flowers for funeral flowers, $375.77; AARP Health Care for an unpaid insurance premium, $338; Wal-Mart for a scarf for Ms. Lindsay, $8.96; IGA for bereavement lunch food, $27.53; safety deposit box rental for period of July 1, 2001 to July 1, 2002, $16.50; and Farmer's National Bank credit card for balance pay off, $15. (Exs. 1-10).
 {¶ 68} Appellant was appointed executrix on September 9, 2002. She never separately presented a claim for reimbursement to the probate court. Contrary to her assertion, appellant's first inventory, filed February 25, 2003, did not list a claim. It is not until appellant filed an amended inventory, on November 19, 2003, that we see any mention of a claim for reimbursement. Even then, appellant listed the claim in the schedule of assets as "Cash advanced for which reimbursement is sought." She then added the amount sought to the rest of the estate's assets. Thus, while appellant now states that she presented her claim, her intentions were not clear to the court. Furthermore, this attempt to present the claim came over a year and two months after she was appointed executrix. Accordingly, it might seem that appellant's claim for reimbursement was time barred by R.C. 2117.02.
 {¶ 69} Appellant, however, alleges that R.C. 2113.36 allows her to seek reimbursement. That statute provides in part: "Allowances, * * *, which the probate court considers just and reasonable shall be made for actual and necessary expenses and for extraordinary services not required of an executor or administrator in the common course of his duty."
 {¶ 70} This court addressed this same issue many years ago in In reWinders' Estate (1945), 68 N.E.2d 677. In that case, we examined R.C.2117.02's predecessor — General Code Section 10509-106. It provided that an executor or administrator, within three months after the date of his appointment, shall present any claims that he may have against the estate to the probate court for allowance, and such claim shall not be paid unless allowed by the court. We concluded that this section applied only to claims that accrued prior to the decedent's death and did not apply to a funeral director's bill. Id. at 679. We further examined R.C. 2113.36's predecessor — General Code Section 10509-193. It provided that executors may be allowed such further allowance as the court considers just and reasonable for actual and necessary expenses, and for extraordinary services not required of an executor in the common course of his duty. We concluded:
 {¶ 71} "Certainly the burial of decedent was a necessary expense following her demise, an obligation which accrued subsequent to her death. We are of the view that this section has application to the question involved, and that the probate court committed no error in allowing the claim in the amount of $350. Surely as a matter of morals, justice and right these beneficiaries under the will should hardly expect the executor to pay this expense out of his own pocket and they benefit thereby to this extent." Id.
 {¶ 72} Since then, at least one other court has found that R.C. 2113.36
applied to allow an executrix to seek reimbursement for funeral expenses even though such reimbursement was not sought until after the expiration of R.C. 2117.02's three-month time limit. See In re Stevens (Apr. 3, 1991), 1st Dist. Nos. C-900211, C-900244.
 {¶ 73} Additionally, the expenses for maintaining the safety deposit box and paying off Ms. Lindsay's credit card balance were also actual and necessary expenses in the course of administering an estate. Other cases which have allowed certain expenses to be paid under R.C. 2113.36, other than attorneys' fees, include expenses for the defense of litigation to preserve shares of stock owned by the estate, In re Jacobys Estate (1958) 155 N.E.2d 282, 79 Ohio Law Abs. 247, and truck rental and storage expenses to maintain the decedent's personal items, In re Estate ofKellhofer (Feb. 18, 1983), 4th Dist. No. 943.
 {¶ 74} Thus, the court should not have denied appellant's claim for reimbursement on the basis of her untimely request. The denial was only proper if the court had another valid reason. The only other valid reason for denying the requested reimbursement would be if the money used to pay the funeral and other expenses did not belong to appellant, but instead belonged to the estate. Hence, this assignment of error hinges upon whether the checking account was a joint and survivorship account.
 {¶ 75} Since the checking account was not found to be a joint and survivorship account, the probate court had a valid reason for denying appellant's reimbursement. If the account belonged solely to Ms. Lindsay, then it passed to her estate. Consequently, appellant paid Ms. Lindsay's funeral expenses and other bills with estate funds and not with her own personal funds. Accordingly, appellant's second assignment of error is without merit.
 {¶ 76} Appellant's third assignment of error states:
 {¶ 77} "THE TRIAL COURT ABUSED ITS DISCRETION IN REMOVING ALLYSON TORRES AS EXECUTRIX OF THE ESTATE."
 {¶ 78} Appellant asserts that the probate court had no grounds on which to remove her as executrix. She claims that the court relied on hearsay from an attorney to the magistrate that the estate account balance was zero. However, she points out that she provided a second partial account at the hearing which reflected a balance in excess of $26,000. Additionally, appellant argues that the court should not have removed her for reimbursing herself for money spent on the estate prior to receiving a written court order allowing reimbursement.
 {¶ 79} On appeal, a reviewing court must determine whether the probate court abused its discretion in removing an executrix from an estate. Inre Putka (March 1, 2001), 8th Dist. No. 77986.
 {¶ 80} In this case, the probate court did not abuse its discretion in removing appellant as executrix. As discussed in the previous assignments of error, the checking account was not proven to be a joint and survivorship account. Consequently, appellant should not have used the account money for her personal use. However, she did just that. After initially exercising her Fifth Amendment right against self-incrimination, appellant admitted that the bank closed the checking account because she spent all of the money in it. (Tr. 1967, 1972). When asked what she withdrew the money for, appellant stated that she used it for her own, personal items such as groceries and spending money. (Tr. 1972, 1974-75).
 {¶ 81} Since appellant admitted to using the money as her personal spending money, the probate court did not abuse its discretion in removing her as the executrix. Accordingly, appellant's third assignment of error is without merit.
 {¶ 82} For the reasons stated above, the probate court's judgment is hereby affirmed.
Waite, J., DeGenaro, J., concurs.