HIPLE, ADMR., APPELLEE, v. SKOLMUTCH ET AL., APPELLANTS.

(No. 2372—Decided February 3, 1950.)

*Mr. M. H. Conrad* and *Messrs. Amerman, Mills, Mills & Jones,* for appellee.

*Messrs. Hart & Hart,* for appellants.

PUTNAM, J. This is an appeal on questions of law from a judgment of the Probate Court of Stark County. The plaintiff, appellee, is the administrator of the estate of Logan Hiple, deceased. The defendant, appellant, Maybelle Skolmutch, is one of the daughters of the decedent and is married to Seldon Skolmutch, another of the defendants. Paul Skol-

mutch is a minor son of Maybelle and Seldon Skolmutch.

This proceeding was instituted in the Probate Court by the administrator, by filing a complaint under the provisions of Section 10506-67, General Code, which provides for the recovery of assets in an estate where some person is concealing, embezzling or conveying away such assets, or is in possession thereof. By virtue of that section, the Probate Court is empowered to determine the title to such assets.

The particular question in the instant case relates to the ownership of a certain 1947 model Pontiac automobile, for which the decedent paid $1,600 in March 1949, prior to his death which occurred on May 10, 1949. Title to the car was taken in decedent's name, but it is now claimed by the defendant, Paul Skolmutch, by reason of an alleged gift *inter vivos*. The trial court awarded the automobile to the plaintiff, administrator, and this appeal results.

The following assignments of error are made:

"1. The Probate Court erred in holding that the gift of the automobile from Logan Hiple to Paul Skolmutch was not a valid gift *inter vivos*.

"2. The Probate Court erred in holding that the Certificate of Title Act of Ohio prevented such gift, otherwise valid, from taking effect.

"3. The Probate Court erred in placing an unconstitutional interpretation upon Section 6290-4, General Code, rather than a constitutional interpretation thereon.

"4. The Probate Court erred in entering judgment against the defendant-appellant Paul Skolmutch, a minor, without the appointment of a guardian *ad litem* for such minor and by whom a defense on his behalf was not made.

"5. The judgment of the Probate Court was contrary to law.

"6. For other errors apparent from the record."

Defendants claim the following two legal questions are presented:

"1. Where the evidence is clear and uncontradicted that a valid gift *inter vivos* of an automobile has been made, does the failure of the donor and donee to comply with the Certificate of Title Act of Ohio prevent such gift from taking effect?

"2. Did the trial court's construction of Section 6290-4, General Code, render that section unconstitutional and in violation of the 'due process' provisions of the state and federal constitutions?"

Plaintiff claims there are four propositions involved which are dispositive of the matter, to wit:

"1. Under the Ohio certificate of title law defendants could not acquire any interest, legal or equitable, in the automobile in the absence of a certificate of title in their names.

"2. Even aside from the certificate of title law there is no evidence in the record of a valid completed gift *in praesenti* from the decedent to his grandson.

"3. The certificate of title law is not in conflict with any provision of the Constitution of the United States or of the Constitution of the state of Ohio.

"4. This is a special proceeding and not an action and therefore Section 11252, General Code, is not applicable."

It is to be noted that plaintiff's propositions Nos. 3 and 4 coincide with assignments of error Nos. 3 and 4.

We believe that defendants' assignments of error Nos. 1 and 2 make a restatement of his legal proposition No. 1 necessary, and it may be restated as follows:

Where the evidence is such that when applied to an ordinary chattel a valid gift *inter vivos* would be effect-

ed, and the subject of the attempted gift is an automobile, does a failure by the donor to comply with the Ohio Certificate of Title Act (Sections 6290-2 to 6290-20, General Code), by not giving the purported donee a certificate of title in his own name, prevent the transaction from being a valid gift *inter vivos*, where the certificate of title remains in the alleged donor?

Assignments of error Nos. 5 and 6 do not need separate treatment. Assignment of error No. 4, that the judgment is void because of failure of the court to appoint a guardian *ad litem* for the minor defendant, Paul Skolmutch, is not tenable because this is a special proceeding and not a civil action so as to invoke the provisions of Section 11252, General Code. See *Durst* v. *Griffith*, 43 Ohio App., 44, 182 N. E., 519.

Likewise, it is our judgment that assignment of error No. 3 is not now an open question in this state. In the case of *State, ex rel. City Loan & Savings Co.*, v. *Taggart*, 134 Ohio St., 374, 17 N. E. (2d), 758, the Supreme Court upheld the constitutionality of that act on the grounds that it was a valid exercise of police power and attempted only to regulate the manner and not the right to dispose of property.

We choose now to discuss defendants' assignment of error No. 1 and plaintiff's proposition No. 2, which are in substance the same, as to whether under the facts in the record there was a valid gift *inter vivos* of this automobile from the decedent to the defendant, Paul Skolmutch.

The record shows that the decedent was a 64-year-old railroad engineer who earned good wages and owned his own home.

The decedent, his daughter, his son in law, his grandson, Paul Skolmutch, and another daughter of the decedent, Wilma, composed the household. The decedent was very fond of Paul, who was about 17 or 18

years of age, and on March 29, 1949, with his own money, decedent purchased the automobile in controversy from one Blair, taking title in his own name. He not only told Blair, but also told eight or nine other witnesses, that he was purchasing the automobile for Paul. To some he said it was a birthday present, to others a graduation present. Paul's mother, Maybelle, said the decedent told her she was to be the boss of Paul concerning the car.

Blair said decedent told him that he, decedent, was buying the car for the boy, but he would have to take title in his own name, because Paul was not old enough. Decedent told Blair also that he would sign for it. He told a Mrs. Heckman that the car was Paul's; that he bought it for Paul and he wanted to be taken around; and that Paul drove him any place he wanted to go. On the day he purchased the car he told a Mrs. Turner that he bought Paul a car and he also told her he wanted Paul to have the car and that he would keep the car in his own name until Paul became 21 years of age.

On the day the car was bought, decedent told Irene Studney that he bought it for Paul as a graduation gift, and for his birthday, with the understanding that Paul was to take him wherever he wanted to go; and that because Paul was a minor he did not put the car in Paul's name. The decedent told Raymond Bowe that the person with whom he had been riding back and forth to work was placed on a different shift, and he, decedent, needed a car to go to work; that he could not drive; and that he bought the car with the understanding that Paul was to take him to and from work, otherwise it was Paul's car.

Maybelle, Paul's mother, testified, among other things, that the morning the car was bought the decedent called her on the phone and asked her if she

would come up town and sign for the car. She told him, in substance, it would take her an hour to get ready and for him to sign for it, which he did. The other testimony is to the same effect and is uncontradicted.

Decedent gave Paul possession of the certificate of title. Paul drove the car, bought gasoline, a spot light and a tire for it, and drove it for his own personal use as well as for the use of the decedent when the latter so desired. The insurance papers were in decedent's name and no assignment was executed on the certificate of title. This was the situation when decedent died on May 10, 1949.

Section 6290-4, General Code, a part of the Certificate of Title Act, provides as follows:

"No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for said motor vehicle for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter."

Under these circumstances, was there a valid gift *inter vivos* of this automobile? Under the facts we are constrained to hold that there was not. There is no direct authority in Ohio, bearing on the question,

and, in other jurisdictions, under somewhat similar statutes, there is a division of authority.

Under the assignments of error the sole question as to the transfer, not otherwise herein disposed of, concerns a gift *inter vivos*. It is fundamental that in such a transfer of property, without consideration, no action in law or equity can be maintained to enforce it.

See 20 Ohio Jurisprudence, 16, Section 12, where we find the following language:

"A gift *inter vivos* has no reference to the future, but goes into immediate and absolute effect. It is essential to its validity that the transfer be executed, for the reason that there being no consideration therefor, no action will lie to enforce it . To execute a gift *inter vivos*, there must be a delivery of the subject thereof."

Another prerequisite to the validity of such a transfer is that there must be a complete delivery of the chattel, where it is susceptible of delivery, and under such conditions that the donor irrevocably parted with all dominion and control thereover.

See 20 Ohio Jurisprudence, 19, Section 14, where we find the following language:

"The delivery must be complete and unconditional. Enough must be done to pass title. To constitute a good delivery of a gift *inter vivos*, there must be not only a parting with possession, but also a parting with the dominion and control of the property, and a vesting of the donee with complete present and exclusive dominion and control. The delivery must be irrevocable; a gift *inter vivos* cannot be made by words and acts which are revocable."

This is the feature which is not present in this case. Under the facts herein the decedent at any time could have changed his mind if Paul had not driven him where he wanted to go, or for any other reason, and

could have sold or mortgaged the automobile at any time. Had decedent executed an assignment to an innocent third party, Paul would have been without recourse. Herein lies the difference between the gift of an automobile, and say, a stove or bed. In this case the decedent did not irrevocably give up control and dominion over the chattel.

We choose to decide this case upon this proposition, rather than the absolute interdiction of Section 6290-4, General Code. The appellee relies upon the case of *Kattwinkel* v. *Kattwinkel,* 80 Ohio App., 397, 74 N. E. (2d), 418. However, the ultimate decisive factor in that case was that the rights of an innocent third party were involved and the facts did not warrant an inference of fraud. The court said at page 399: "Had the wife still had title to the automobile at the time the restraining order was made, there would be little difficulty with the plaintiff's contention."

We recognize the fact that there may be cases where property rights in an automobile may be established in a court of law or equity, without strict compliance with the Certificate of Title Act, and with this proposition we are in accord. However, that does not mean that a gift *inter vivos* of an automobile can be established where no certificate of title is given and thereby no final relinquishment of dominion and control shown or effected.

It follows that the judgment of the court below must be and is affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and McCLINTOCK, J., concur.