Defendant-appellant, Linda S. Dever, appeals a Clermont County Court of Common Pleas, Domestic Relations Division, property division in a divorce action with plaintiff-appellee, Michael L. Dever ("Dever"). We affirm in part and reverse in part.
On March 18, 1989, the parties signed a prenuptial agreement ("Agreement") which provided that when the marriage terminated, neither party would be entitled to each other's assets obtained before or during the marriage. However, the Agreement provided that the parties could make gifts to one another. Dever, owner of Automanage, a multi-million dollar car dealership, and appellant were married on March 19, 1989.
During the course of the marriage, Dever transferred some of his assets to appellant. On December 12, 1989, Dever executed a survivorship deed, transferring half his interest, on a piece of property located on Grandin Road in Cincinnati to appellant.[1] On January 8, 1990, Dever transferred half of his interest of a brokerage account through Merrill Lynch ("ML Account") to appellant, creating a joint and survivorship account. On July 30, 1992, Dever withdrew money from the ML Account to purchase a house on Kenwood Road in Cincinnati. On August 4, 1992, Dever purchased the Kenwood house and had the title executed in Dever's and appellant's name as joint and survivorship owners. In September, 1992, appellant withdrew approximately $610,000[2] from the ML Account and deposited the money in her individual Paine Weber account.[3] On December 15, 1993, Dever transferred his half interest in Kenwood to appellant, thereby executing the title to appellant as sole owner. Appellant claimed that the transfers given to her were gifts from Dever. However, Dever claimed that the transfers were made to protect his assets from creditors.
In August 1993, Dever's largest creditor, Huntington Bank, ("Bank") learned of Dever's transfers to appellant. The Bank informed Dever that such transfers violated the Ohio Uniform Fraudulent Transfer Act and threatened foreclosure if the transfers were not undone. On December 14, 1993, Dever, Automanage, and appellant entered into an agreement ("Bank Agreement") with the Bank. The Bank Agreement required appellant to pay $400,000 from her Paine Weber account and for Dever and appellant to sell the Grandin property, giving the equity to the Bank. In return, the Bank withdrew its claims of fraudulent transfers against appellant and Dever. On that same day, appellant and Dever signed a Letter of Understanding on Partial Satisfaction of Section Twenty-Three of Ante-nuptial Agreement ("Letter"). The Letter stated that appellant (1) received $600,000 as a gift from Dever, (2) had joint ownership of the Kenwood property with Dever, (3) received Dever's half interest in the Kenwood property as a gift, now making her a sole owner, (4) paid $400,000 to the Bank, (5) was entitled to keep the balance in her Paine Weber account as her separate property, (6) shall keep the balance of the funds in the ML Account and the Kenwood house as her separate property, and (7) acknowledged that the gifts she received shall be set off against Dever's obligation to her in the Agreement.[4]
On March 13, 1996, Dever filed for divorce. On April 2, 1997, the trial court held that the Bank Agreement was valid, but held the Letter to be invalid since it was prohibited by R.C.3103.06.[5] The trial court refused to consider the Letter in its property distribution. On December 2 and 3, 1997, the trial court held a hearing on Dever's complaint for divorce. The trial court granted the divorce and found no evidence to substantiate appellant's claim that Dever's transfers were gifts.
In the June 22, 1998 divorce decree, the trial court granted the divorce and found that the Grandin house and the ML Account were Dever's separate property and Dever did not gift any asset to appellant. The trial court further found that Dever purchased the Kenwood property with his separate property and the funds in appellant's Paine Weber account came from the ML Account which belonged to Dever. As a result, the trial court found that the Kenwood property and the funds in the ML Account and in the Paine Weber account were not marital property and belonged solely to Dever.
Appellant filed a timely appeal and asserts three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO ENFORCE THE ANTENUPTIAL AGREEMENTS [sic] PLAIN, UNAMBIGUOUS CONTRACTUAL LANGUAGE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF DEFENDANT-APPELLANT BY CONSTRUING THE ANTENUPTIAL AGREEMENT UNDER GIFT LAW AND MISAPPLYING THE ELEMENTS OF GIFT LAW.
Assignment of Error No. 3:
 THE TRIAL COURT ABUSED EQUITY TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REWARDED HUSBAND'S FRAUDULENT ACTIONS AND FURTHER IMPOVERISHED THE ONLY INNOCENT PARTY IN THE DIVORCE.
Under all three assignments of error, appellant asserts that the: (1) funds in her Paine Weber account and the ML Account ("Funds"), and (2) her half interest in the Grandin property and her sole interest in the Kenwood property ("Properties") should have been awarded to her as her separate property either under contract law, gift law, or equity. Since appellant's first and second assignments of error are intertwined, we will address them together.
In her first assignment of error, appellant asserts three arguments. Appellant asserts that the trial court erred when it failed to interpret the Agreement and apply contract law. Second, appellant argues that the trial court erred when it failed to reimburse appellant for money she expended to cover Dever's premarital debts. Third, appellant argues that the trial court erroneously failed to follow the Agreement and award appellant expenses.
In her second assignment of error, appellant asserts that the trial court erred when it applied gift law and, in the alternative, the trial court erred when it misapplied gift law.
We agree in part and disagree in part.
1. Contract Law Gift Law A. Contract Law
Typically, a trial court's distribution of property in a divorce action is subject to an abuse of discretion standard.Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. However, when a trial court must determine which property is separate as opposed to marital property, the manifest weight of the evidence standard applies. James v. James (1995), 101 Ohio App.3d 668,684. Therefore, the trial court's characterization of property in a divorce action will not be disturbed provided that there is some competent and credible evidence satisfying the essential elements. C. E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279.
In the present case, the parties signed a prenuptial agreement which provided for the division of property when the marriage terminated. A prenuptial agreement is a contract which determines the distribution of assets of each party when the marriage terminates. Fletcher v. Fletcher (1996), 68 Ohio St.3d 464,466-67. Determining the construction of a contract is a matter of law that is subject to de novo review. Long BeachAssociation v. Jones (1998), 82 Ohio St.3d 574, 576. In applying the general rules of contracts, the intent of the parties will be determined by any clear and unambiguous terms in the contract. Id.
The issue that is in dispute is section three of the Agreement which states:
 C. Separate property. The parties intend and desire that all property owned respectively by each of them at the time of their marriage, as disclosed in the attached Exhibits A and B, and all property that may be acquired by each of them from any source during their marriage, shall be respectively their separate property, except as otherwise provided herein.
Appellant argues that this section requires a finding that the Funds and Properties she acquired during the marriage are her separate properties. In applying the general rules of contract law, we find that the word "acquired" is a broad term that does not require ownership. Acquire means:
 [t]o gain by any means, usually by one's own exertions, to get as one's own; to obtain by search, endeavor, investment, practice, or purchase; receive or gain in whatever manner; come to have. In law of contracts and of descents, to become owner of property; to make property one's won. To gain ownership of. * * * The act of getting or obtaining something which may be already in existence, or may be brought into existence through means employed to acquire it. * * * Sometimes used in the sense of "procure." It does not necessarily mean that title has passed. Includes taking by devise.
Black's Law Dictionary (6 Ed.Rev. 1991) 24.
"Acquired" as used in the Agreement is clear and unambiguous. It means that whatever each party acquires during the marriage is considered to be their respective separate property. However, "acquire" does not state a particular method in which one "acquires" something. One may acquire something through different methods, for example, through an inheritance, gift, contract, purchase, investment, or "in whatever manner."
B. Gift Law
A gift is a voluntary transfer by the donor to the donee without any consideration or compensation. In Re: Estate ofKenney (May 13, 1993), Montgomery App. No. 13384, unreported. The essential elements of an inter vivos gift are: (1) an intention on the part of the donor to transfer the title and right of possession to the donee, (2) delivery by the donor to the donee, (3) relinquishment of ownership, dominion and control over the gift by the donor, and (4) acceptance by the donee. Bolles v. Toledo Trust Co. (1936), 132 Ohio St. 21; InRe: Estate of Kenney at 1. All the facts and circumstances must be considered in determining whether the elements of a gift have been proven. In Re: Estate of Kenney at 7. This issue will be reviewed under the manifest weight of the evidence standard. Therefore, the reviewing court will defer to the trial court in weighing the evidence and determining the credibility of the witnesses. Id. at 4.
2. Intent Under Contract Gift Law
In the present case, it is evident from the record that there are two methods in which appellant could have acquired the Funds and Properties: by contract or by gift. Under either, it is essential to determine the intent of the transferor or donor. If the intent is to transfer a present possessory interest in either real property or in a joint bank account, then intent can be established under both contract and gift law. See Wright v. Bloom (1996), 69 Ohio St.3d 596; Helton v.Helton (1996), 114 Ohio App.3d 683. Therefore, intent is analyzed in the same manner regardless if the asset is acquired by gift or contract.
In determining the rights to a joint and survivorship bank account, a trial court shall apply the principles of contract, not gift law.[6] Vetter v. Hampton (1978), 54 Ohio St.2d 227, paragraph two of the syllabus. Therefore, we agree with appellant that contract law is applicable in determining the transfer in the Funds. However, since there was no contract between appellant and Dever for the Properties, the only manner appellant could have acquired the Properties was by gift. Therefore, the trial court did not err when it applied gift law to determine who owned the Properties.
The Ohio Supreme Court has determined the intent of the parties in a contract by determining the purpose in which the transferor put the title of the asset in the transferee's name.Wright, 69 Ohio St.3d at 596; Vetter, 54 Ohio St.2d at 227. If there is evidence that the transfer of title was for more than mere ownership, for example, to accomplish a specific objective, then there is sufficient evidence of intent.
The creation of a joint account raises a rebuttal presumption that at the death of one of the co-owners, each owner shared equally in the funds. In Re Estate of Thompson (1981), 66 Ohio St.2d 433, paragraph two of the syllabus. However, "[a] joint and survivorship account belongs, during the lifetime of all the parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Id. at paragraph one of the syllabus. Therefore, a co-owner to a joint and survivorship account is presumed to be entitled only to the amounts she deposited into the account, unless she can demonstrate a different intent.
3. Merrill Lynch Account
According to Vetter, determining who is entitled to the assets in the ML Account shall be analyzed under contract law. Further, Thompson states that the presumption during the livesof co-owners is that each is entitled to the amount of their contributions. In this case, appellant claims that the intent was that the parties were to share equally, while Dever testified that his intent was for appellant to obtain the funds in the event of his death. At trial, there was uncontroverted testimony that Dever contributed one hundred percent of the funds in the account. Therefore, appellant bears the burden to prove by clear and convincing evidence that Dever intended her to share equally in the ML Account funds during their lives.
We find that appellant failed to set forth clear and convincing evidence that would support her claim that Dever intended for her to share equally in the remaining funds in the ML Account during their lives. However, Dever testified that he directed appellant to withdraw $610,000 in September 1992, and told her to do whatever she wanted with the money. Dever further testified that the reason he directed appellant to withdraw the money was for bankruptcy planning purposes. Therefore, based on the above case law, we find that trial court erred when it found no competent and credible evidence demonstrating donative intent as to Dever's transfer of the $610,000.
Once appellant took the money out of the account at Dever's direction, this constituted sufficient delivery. Thereafter, appellant used the money to open a Paine Weber account in her name only. Thus, Dever relinquished all control and ownership over the $610,000. Accordingly, appellant's argument that she is entitled to the balance of the funds in the ML Account is overruled. However, we find that appellant's argument that Dever gifted the $610,000 to her is well-taken.
4. Grandin House and $400,000
Dever transferred his ML Account and Grandin house into appellant's name with a joint and survivorship interest. During the marriage, appellant removed $610,000 from the account and opened an account with Paine Weber. On December 14, 1993, appellant entered into a contract with the Bank, whereby she agreed to transfer her half interest in Grandin[7] and $400,000 from her Paine Weber account to the Bank. In return, the Bank would not pursue a fraudulent transfer claim against her and Dever. Appellant argues that her transfer of the Grandin house and the $400,000 to the Bank paid off Dever's premarital debt and, pursuant to the Agreement, Dever is solely responsible for his premarital debts. Therefore, appellant argues that she is entitled to the return of those assets.
We recognize that the Bank Agreement was prompted as a result of Dever's premarital debt. However, the reason appellant relinquished those assets to the Bank was not to pay Dever's premarital debts, but rather to avoid a lawsuit. Appellant conferred her interest in those assets to the bank as consideration in a valid contract. As a result, we find that appellant contracted away any interest she might have had in the Grandin house and in the $400,000. Accordingly, appellant's argument that the trial court erred in failing to reimburse her for paying Dever's premarital debt is without merit.
5. Kenwood House
We first note that Vetter and Bloom defines present possessory interest as a transferring of an asset in order to achieve a specific objective. Further, Helton and Wolf v. Wolf
(Sept. 27, 1996), Green App. No. 96CA10, unreported, followed the Ohio Supreme Court's analysis that when a transferor transfers his interest in real property for a specific purpose other than ownership, the transferor has demonstrated donative intent.
In Helton, the husband, Jack Helton, inherited a home prior to his marriage. During the marriage, Helton titled the house into his wife's name as a joint owner with right of survivorship. When the parties divorced, the wife claimed that the transfer was a gift, while Helton claimed that his intent was strictly for estate planning purposes. The appellate court held that but for his wife, Helton would not have been able to achieve his goal of estate planning. Therefore, the appellate court held that Helton's purpose to transfer the house established a donative intent to transfer a present possessory interest. Id. at 687. As a result, the house was transformed into marital property. Id.
In Wolf, the owner of real property titled the house into her son's name in order to escape probate expenses. The appellate court found that the purpose for which the transfer was made demonstrated an intent to transfer a possessory interest, therefore, established donative intent.
In the present case, Dever purchased the Kenwood house with the money from the ML Account; appellant did not contribute to the purchase. At most, appellant could have acquired the Kenwood house as a gift. Dever testified that he had appellant's name placed on the title as a joint and survivorship owner for the purpose of bankruptcy planning. In December 1993, Dever transferred his interest completely to appellant, leaving appellant as sole owner.[8]
Based upon the above case law, Dever's purpose demonstrated his intent to transfer to appellant a present possessory interest in the Kenwood house. The trial court believed the testimony of Dever but held that Dever's testimony did not establish donative intent. However, we find that Dever's testimony establishes donative intent as a matter of law. Therefore, this court is not substituting its judgment for the trial court when we find that the trial court erred in finding no donative intent.
Next, the remaining elements of delivery and relinquishment of ownership must be decided to determine whether a gift was completed by Dever to appellant.
 As in the case of other property [for example real property], * * * there must be a delivery to and acceptance by the donee or something equivalent thereto. It is not necessary that there should be a manual delivery of the thing given, * * * nor is there any particular form or mode in which the transfer is made. The gift may be perfected when the donor places in the hands of the donee the means of obtaining possession of the contemplated gift, accompanied with acts and declarations showing an intention to give and to divest himself of all dominion over the property.
O'Brien v. O'Brien (1925), 112 Ohio St. 202, 212. The delivery must in effect make the donor unable to undo the gift. Hiple v.Skolmutch (1950), 88 Ohio App. 529. In other words, the gift must be irrevocable.
This court has held that once the donor has placed the donee's name on the title of an asset, that creates sufficient delivery for gift analysis. Fleisch v. Suedhof (Dec. 8, 1986), Clermont App. No. CA86-05-032, unreported; Goebel v. Brown
(Sept. 21, 1987), Butler App. No. CA86-12-178, unreported. Here, Dever executed and recorded a deed to the Kenwood house in appellant's name as sole owner. This act constitutes delivery by Dever. Further, we find that Dever could not sell the Kenwood house nor remove appellant's name from the title of the Kenwood house without appellant's authorization. As a result, we find that Dever could not undo the title in the Kenwood house. Accordingly, we find appellant's argument that Dever gifted her his interest in the Kenwood house to be well-taken.
The last argument appellant asserts under her first assignment of error is that the trial court erred when it did not order Dever to pay her expenses. We disagree.
Section nine of the Agreement requires Dever to pay for appellant's expenses. The trial court ordered Dever to pay appellant's expenses and attorney fees of $241,394.33. Dever paid appellant's expenses from the funds in the ML Account. Appellant claims that Dever paid her expenses with her money. As a result, appellant argues that Dever has not paid her expenses as required under the Agreement.
We have previously ruled that appellant is not entitled to the balance of the funds in the ML Account. Therefore, Dever did not pay appellant her fees and expenses with her money, rather, Dever used his separate property to pay $241,394.33 to appellant. Accordingly, appellant's argument is without merit.
To sum up, we find that appellant's argument under her first assignment of error that contract law should have been applied in determining who is entitled to the Grandin house and the balance of the funds in the ML Account is well-taken. However, we find that appellant contracted any interest she might have had in Grandin and she is not entitled to the balance in the ML Account. Further, we find that appellant's argument that the trial court erred when it did not reimburse her for paying Dever's premarital debt and her expenses is overruled.
Under her second assignment, we find that appellant's argument that the trial court should not have applied gift law in determining ownership of any of the assets is overruled. However, we find that appellant's argument that the trial court misapplied gift law is well-taken. We find that appellant is entitled to the Kenwood house and any funds remaining in her Paine Weber account but that she contracted away her interest in $400,000 of that account.
In her third assignment of error, appellant argues that since Dever came into court with "unclean hands," equity demands that she is entitled to the Funds and the Properties. We disagree.
As previously stated, determining ownership of a joint and survivorship account is analyzed under contract law. Ownership in a joint and survivorship account during the lives of the parties raises a rebuttable presumption of ownership in proportion to the contributions made. We have found that the record supports a finding that appellant failed to overcome this presumption. The fact that Dever placed appellant's name on the account to protect his assets does not change the analysis.
Further, we have ruled that appellant contracted with the Bank to give up any interest she might have had in the Grandin House and in the $400,000. Appellant was represented by counsel and voluntarily entered into a contract with the Bank. Assuming that appellant was entitled to the Grandin house, she gave up the house and the $400,000 to the Bank under the Bank Agreement. Finally, we have ruled that Dever gifted the Kenwood house to appellant, thus appellant's equity argument as to the Kenwood house is moot. We see no reason to deviate from these findings based on Dever's alleged fraudulent transfers which directly affected a third party rather than appellant. Based on the above findings, appellant's third assignment of error is overruled.
Judgment affirmed in part, reversed in part, and remanded to the trial court to make the property division as follows: (1) grant the Kenwood house to appellant and (2) award appellant the remaining funds in her Paine Weber account.
KOEHLER and YOUNG, JJ., concur.
[1] Dever purchased the house on Grandin Road prior to his marriage with appellant.
[2] The record is unclear as to the exact amount, but testimony established that the amount was either $600,000 or $610,000.
[3] The record is unclear as to when appellant opened her Paine Weber account in which she deposited the $610,000 she withdrew from the joint ML Account. Appellant testified that she withdrew the money to open an individual ML Account, then she closed the account and used the money to open the Paine Weber account sometime in June 1993.
[4] The Agreement provided that when the marriage terminated, Dever would be responsible for appellant's expenses and pay appellant spousal support. The Letter served to offset the 'gifts' given to appellant against the spousal support and expenses Dever would be required to pay.
[5] R.C. 3103.06 states: "A husband and wife cannot, by any contract with each other, alter their legal relations, except that they may agree to an immediate separation and make provisions for the support of either of them and their children during the separation." Neither party has appealed the trial court's decision to hold the Letter invalid.
[6] Under the gift theory rationale: "It would seem that when a depositor opens a joint and survivorship account and executes signature cards which recite that the account is to be paid to either during the depositors' joint lives and to the survivor upon the death of either, a rebuttable presumption of an intent to make a gift of a joint interest should arise." Wright,69 Ohio St. 3d at 606, citing Kepner, The Joint and Survivorship Bank Account — A Concept Without a Name (1935), 41 Cal.L.Rev. 596.
[7] In essence, appellant agreed to sell the Grandin house and use the proceeds to pay off the mortgage and give the balance of what was left from the sale to Huntington Bank.
[8] During the negotiations with the Bank, Dever transferred his remaining interest to appellant so appellant would accept the terms of the Bank Agreement.