KEATLEY ET AL., APPELLANTS, *v.*
UNITED NATIONAL BANK & TRUST COMPANY, APPELLEE.

(No. 5160—Decided May 28, 1980.)

*Messrs. Schmuck, Swallen, Davidson, Ake, Kandel & Ake, Mr. George M. Davidson, Jr.,* and *Mr. Harry W. Schmuck,* for appellants.

*Amerman, Burt & Jones Co., L.P.A.,* and *Mr. William W. Emley,* for appellee.

PUTMAN, P. J. This is an appeal from the entering of a defendant's judgment in a civil case in which a money judgment was sought in the Court of Common Pleas of Stark County. No claim of right to a jury trial was made, and the cause was referred to a referee under Civ. R. 53.

The referee conducted a hearing on June 25 and 26 of 1979; and, on June 28, 1979, the referee filed a four-page document, consisting of separately stated Findings of Fact and Conclusions of Law and recommending a defendant's judgment.

On July 30, 1979, the trial court filed for journalization its judgment entry, entering a defendant's judgment and incorporating the referee's report therein in full.

No objections to the referee's report were ever filed, but a timely notice of appeal from the judgment was filed on August 15, 1979.

We overrule all five assignments of error and affirm the trial court for the reason that none of the matters assigned as error were ever called to the attention of the trial court in time for him to have corrected them.

We reach this conclusion solely upon the strength of Civ. R. 53(E), which requires objections to the referee's report and which reads, in full, as follows:

"(E)(1) The referee shall prepare a report upon the matters submitted to him by the order of reference. He shall file the report with the clerk of the court and shall mail a copy to the parties. In an action on the merits of an issue to be tried without a jury, he shall file with his report a transcript of the proceedings and of the evidence only if the court so directs.

"(2) A party may, within fourteen days of the filing of the report, serve and file written objections to the referee's report. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may:

adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself.

"(3) The effect of a referee's report is the same whether or not the parties have consented to the reference. When the parties stipulate in writing that a referee's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.

"(4) Before filing his report a referee may submit a draft thereof to counsel for all parties for the purpose of receiving their suggestions. The referee shall sign any findings or decision and file it together with any exceptions.

"(5) The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court."

In our view, the requirement of preserving a claim of error by making an appropriate objection in the trial court is the concept captured by the objection requirement expressly stated in Civ. R. 53(E). The requirement of calling the matter to the attention of the trial court as a predicate of appellate review is a proposition of law of general application settled beyond question. See, for example, the voluminous authorities collected in 4 Ohio Jurisprudence 3d, Appellate Review, Section 137.

We have carefully considered the alternate view of this appeal which is that the trial judge had the *sua sponte* responsibility to review the referee's four-page Findings of Fact and Conclusions of Law and to verify, to his own satisfaction, the correctness thereof. We reject this view.

It is our opinion that the function of Civ. R. 53(E)(2), which requires objections to the referee's report, is to relieve the trial court of that responsibility.

Assuming, *arguendo,* that we would have found for the plaintiffs had we been sitting with the *de novo* responsibility of the trial court, that is not our task. We cannot escape considering the view from the position of the trial judge who, in our opinion, cannot be said to have erred in ruling upon any matter properly before him, in the absence of objection or any other warning from trial counsel for plaintiffs.

Because of the view we hold of this case, it is not necessary for us to fatten this memorandum by a restatement of the assignments of error or a retyping of the referee's four-page

report. It is our understanding that those matters will be, of necessity, reproduced should any motion to admit this case be addressed to the Supreme Court. More importantly, we do not wish to obscure the narrow basis upon which our affirmance rests.

*Judgment affirmed.*

DOWD, J., concurs separately.

RUTHERFORD, J., concurs in part and dissents in part.

DOWD, J., concurring.   In my view, the well-written and reasoned dissent of Judge Rutherford on the merits of the appeal serves to highlight the position that Judge Putman and I have taken with respect to the requirement, as we view it, to file timely objections to the referee's report with the trial court to preserve the same for appellate review.

Judge Rutherford has examined the referee's report, studied the transcript of the testimony, and concluded as an *appellate judge* that the referee erred. In sum, Judge Rutherford, by responding to the objections to the referee's report that have been raised for the first time in the Court of Appeals, has responded as the *trial judge* would have, had the objections been raised pursuant to the provisions of Civ. R. 53(E).

I understand Judge Rutherford's position to be that the trial judge, in the absence of objections to the referee's report, nonetheless has the duty to study, critically, the referee's report and ask for the exhibits and the transcript of the testimony when the conclusions of law appear, arguably, to be incorrect. Such a view, in my estimate, places too great a burden on the trial court, defeats the purpose of the use of referees, and constitutes an abandonment of the adversary process. Thus, I concur with Judge Putman.

RUTHERFORD, J., concurring in part and dissenting in part. In this case we have the issue of whether the making of a Civ. R. 53(E) objection by appellants' counsel is of such mandatory nature as to deprive the Court of Appeals of the right to consider plain error in the referee's Findings of Fact and Conclusions of Law as adopted by the court. The position taken in the majority opinion is that Civ. R. 53(E) requirements are of such mandatory nature as to require affirmance of the judg-

ment, irrespective of the nature of the error appearing on the face of the judgment entry appealed from.

In this cause the record contains the Findings of Fact, Conclusions of Law, Recommendation of the referee, and a transcript of the proceedings.

To demonstrate the error which in my opinion is plain error rendering the judgment contrary to law on its face, as appears from both the findings, conclusions and judgment appealed from, it is necessary to set forth said Findings of Fact, Conclusions of Law and Recommendation of the referee, which read as follows:

*"FINDINGS OF FACT:*

"1. The Plaintiff, Hobert B. Keatley on December 2, 1966 entered in to a contractual relationship, in writing, for the rental of a safe deposit box, known as S-33 with The Canton National Bank, Main Office, Canton, Ohio, n.k.a. the United National Bank & Trust Co.,***.

"2. The Plaintiff, Ronald H. Keatley, in the name of ABC Venetian Blind Co., on March 20, 1967 entered into a contractual relationship, in writing, for the rental of a safe deposit box, known as S-59 with The Canton National Bank, Main Office, Canton, Ohio, n.k.a. the United National Bank & Trust Co.***.

"3. The Plaintiff, Ronald H. Keatley, on December 1, 1970 borrowed $2,500.00 from the United National Bank & Trust Co., securing the loan with collateral contained in safe deposit box S-59, to-wit: a coin collection***.

"4. The Plaintiff, Ronald H. Keatley, on or about December 29, 1972, borrowed $5,049.47 from the United National Bank & Trust Co., securing it with collateral contained in a safe deposit box, S-59, to-wit: a coin collection***.

"5. The Plaintiff, Hobert B. Keatley, made several loans from the United National Bank & Trust Co., in 1973, 1974 and 1976***.

"6. The Plaintiff, Ronald H. Keatley, to secure the loans set forth in paragraphs 3 and 4 hereinabove, by letter, relinquished his key and/or keys to the consumer loan department as agents***.

"7. The loans made by both Plaintiffs, either as makers and/or co-makers, herein were secured by Financing State-

ments duly filed in the Stark County Recorder's Office in Canton, Ohio, showing the personal property securing the loans, including coin collections, without specifying the location of the coin collections***.

"8. The evidence established by bank records was that the only box which had a 'Caution' and/or notice on its paper work was that rented by ABC Venetian Blind Co., (Ronald H. Keatley), as authorized by letter of December 1, 1970 from Ronald H. Keatley***.

"9. The bank records established that the only safe deposit box that was entered was S-59, the property of Ronald H. Keatley, and that S-33, the property of Hobert B. Keatley, was never entered except by the Plaintiff himself***.

"10. The evidence established that there was never an inventory of the items in either S-33 or S-59 safe deposit boxes prior to any loans being made to the Plaintiffs and that after a loan was made, only a partial inventory was made of one of the boxes and/or both boxes.

## "CONCLUSIONS OF LAW

"1. The lease of the safety deposit boxes by the Plaintiffs herein created a lessor-lessee relationship and not a bailment situation. The rules of contract law govern the interpretation of this relationship, and not the law of bailment.***The lease agreement, having been in writing, makes the contract an express contract between the parties, both executory and an express conveyance. The parties are therefore bound by its terminology which provides, in paragraph 3, that ' . . . unauthorized access shall not be inferred from the loss or destruction of any property located or thought to be located in the leased space, nor shall the landlord be liable for the wrongful acts of any person having right to access hereunder.' And paragraph 4 of the lease provides that ' . . . it is agreed that possession and control of the property deposited in the leased space is vested exclusively in the tenant and the persons having access thereto, and the landlord shall not become a bailee of any of the property located in the leased space.'

"2. The pledging of the keys to the safe deposit box with the consumer loan department of the same bank in which the safe deposit boxes are located does not create a bailment, but rather an agency between the Plaintiffs and the Defendant

bank. The Plaintiffs must show that the agent bank was negligent and the mere allegations that there was a loss, which is unexplained, does not create any liability. See *Hauck* v. *First National Bank,* 55 N.E. 2d 565.

"3. The Plaintiff[s] herein having the burden of proof in this case, and having failed to go forward with the evidence by proving the contents of the safe deposit boxes; the value of the contents of the safe deposit boxes; and the negligence of the defendant bank in this matter.

"IT IS THEREFORE RECOMMENDED:

"That judgment be awarded to the Defendant, United National Bank & Trust Co., at Plaintiffs' costs.

[Signed by the referee]

#### "*NOTICE*

"A copy of the foregoing 'Findings of Fact; Conclusions of Law; and Recommendation to the Judge', was mailed to George M. Davidson, Jr., and Harry W. Schmuck, Attorneys for the Plaintiff, 401 Central Trust Tower, Canton, Ohio 44702, and Amerman, Burt & Jones Co., L.P.A., Attorneys for Defendant, 250 Peoples-Merchants Trust Building, Canton, Ohio 44702, this 27th day of June, 1979.

[Signed by the referee]"

The court's judgment entry reads as follows:

#### "JUDGMENT ENTRY

"The Complaint of Plaintiffs Hobert B. Keatley and Ronald Keatley against Defendant United National Bank & Trust Co. came on for hearing before***[the] Referee appointed by the Court, with agreement of all parties.

"On June 28, 1979, [the] Referee***filed with the Court his findings of facts; conclusions of law; and recommendation to the judge. The Court finds those findings and conclusions to be well taken, and judgment is hereby awarded to Defendant United National Bank & Trust Co., with costs being taxed to the Plaintiffs. Such Findings of Fact, Conclusions of Law, Recommendations to the Judge are attached hereto and made a part of this entry.

[Signed by the Judge and
filed with the Clerk]"

With respect to the objections to the referee's report, Civ. R. 53(E)(2) reads:

"A party *may*, within fourteen days of the filing of the report, serve and file written objections to the referee's report. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself. " (Emphasis added.)

I do not interpret this rule which provides that an objection *may* be filed to have the encompassing effect given to it by the majority opinion in this case.

As to plaintiff Ronald H. Keatley, the referee's Findings of Fact, *supra,* as adopted by the court in the judgment entry, discloses that on March 20, 1967, Ronald H. Keatley entered into a contractual relationship, in writing, with the United National Bank and Trust Company for the rental of a safe deposit box known as "S-59" which created a lessor-lessee relationship as of that time and that thereafter Ronald H. Keatley on December 1, 1970 borrowed $2,500 from the bank, securing the loan with collateral contained in safe deposit box S-59, to wit, a coin collection; in concurrence with which, the letter which reads as follows was delivered to the bank:

"For the purpose of obtaining a loan in the amount of $2,500.00 from The Canton National Bank for a period of 24 months, I hereby pledge U. S. Coins and Currency (Collectors Items) in the face amount of $3,200.00 as security.

"The Coins and Currency are to be kept in the Safe Deposit Department, Safe #59, and the keys to the compartment will be retained by the Consumer Credit Department of the bank until the loan is paid in full.

"I hereby waive any right to access to the compartment for the duration of the loan; however, the contents described above shall be released to me by the bank when the loan is paid off."

Further, the referee's Findings of Fact indicates that plaintiff Ronald H. Keatley, on or about December 29, 1972, borrowed $5,049.47 from the United National Bank and Trust Company, securing the loan with collateral contained in Safe Deposit Box S-59, to wit, a coin collection; in concurrence with

v.▪ich, the letter which reads as follows was delivered to the bank:

"For the purpose of obtaining a loan in the amount of $5,049.47, from the United National Bank & Trust Company for a period of 18 months, I hereby pledge U. S. Coins and Currency (Collectors Items) in approximately the face amount of $3,200.00, as security.

"The Coins and Currency are to be kept in the Safe Deposit Department, Safe #59, and the keys to the compartment will be retained by the Consumer Credit Department of the bank until the loan is paid in full.

"I hereby waive any right of access to the compartment for the duration of the loan; however, the contents described above shall be released to me by the bank when the loan is paid off."

The referee further made a finding, adopted by the court, that plaintiff Ronald H. Keatley, to secure said loans heretofore set forth, relinquished his keys to the bank's Consumer Credit Department, as his agents.

In the Conclusions of Law found by the referee and adopted and included by the court in the judgment entry, it was adjudged that a lease of the safe deposit box by plaintiff Ronald H. Keatley created a lessor-lessee relationship and not a bailment situation, that the requirements of contract law govern the interpretation of this relationship and not the law of bailments, and that by the lease agreement, entered into between the parties when the boxes were originally leased, the parties thereto became bound by its terminology which provides in paragraph No. 3 that:

"***unauthorized access shall not be inferred from the loss or destruction of any property located or thought to be located in the leased space, nor shall the landlord be liable for the wrongful acts of any person having right to access hereunder."

In addition, paragraph No. 4 of the lease agreement provides that:

"***it is agreed that possession and control of the property deposited in the leased space is vested exclusively in the tenant and the persons having access thereto, and the landlord shall not become a bailee of any of the property located in the leased space."

Further, the referee found that the pledge of the keys to the safe deposit box with the Consumer Credit Department of the same bank in which the safe deposit boxes were located did not create a bailment but an agency between plaintiffs and defendant bank, requiring plaintiffs to show that the agent bank was negligent—the mere allegations that there was an unexplained loss, not creating liability; wherefore, judgment was rendered in favor of defendant bank.

In my opinion the turning over of the keys by plaintiff Ronald H. Keatley and the waiver of any right of access to the safe deposit box for the duration of the loan, with the contents as security, created a bailment, rendering the provisions of paragraph Nos. 3 and 4 of the original lease agreement, *supra,* inapplicable to the newly created bailment with the bank, as bailee, taking exclusive control of safe deposit box S-59 and the collateral therein.

The transcript discloses that when plaintiff Ronald H. Keatley and an officer of the bank sought entrance to the box, the keys necessary to open the box, all of which had been in possession of the bank, could not be located in the location where keys were normally kept, but were allegedly found in the drawer of the desk of a discharged employee. The record also contains evidence that when box S-59 was opened, the face value of the collection remaining in the box was less than the face amount of that pledged as security.

As to plaintiff Ronald H. Keatley, in my opinion, the assigned error that the trial court erred, in the Conclusions of Law, in failing to conclude that the relationship between the parties was a bailment is well taken. I find the Findings of Fact and Conclusions of Law contained in the report of the referee, which the court adopted and made a part of the judgment entry, that only an agency relationship, rather than a bailment had been created, is contrary to law.

However, the record further discloses that a small balance is still owed on the loans; in the absence of payment, the bank is not obligated to release the collateral pledged as security. Thus, no cause of action by plaintiff Ronald H. Keatley, as bailor, against the United National Bank and Trust Company has accrued; for which reason, the entry of a judgment, which might be considered *res judicata* to such action when it does accrue, would be prejudicial.

Therefore, a judgment ought to be entered dismissing the action of plaintiff Ronald H. Keatley against the United National Bank and Trust Company, without prejudice to the filing of an action by Ronald H. Keatley against the bank if such cause of action accrues upon payment of the loan in full.

However, I concur in the affirmance of the portion of the judgment rendered in favor of the United National Bank and Trust Company against plaintiff Hobart B. Keatley because the referee's Findings of Fact, to which no objection was made in the Court of Common Pleas, do not indicate that a bailment situation was created as to safe deposit box S-33, which was leased by plaintiff Hobart B. Keatley. Further, I support the Conclusions of Law and the judgment, rendered against plaintiff Hobart B. Keatley, which, upon *those* findings and conclusions, is not contrary to law.

I am aware of the fact that a Court of Appeals in the exercise of its discretionary power ought not, generally, to consider matters not called to the attention of the trial court; but, I do not read Civ. R. 53(E) to preclude exercise of discretionary power in the instant case because no objection was made to errors, which, in my opinion, as to plaintiff Ronald H. Keatley, appear on the face of the report, and which errors of commission, I feel, to be of such magnitude, that justice requires they be given consideration.

For the reasons set forth I concur in the affirmance of the portion of the judgment rendered in favor of the United National Bank and Trust Company against plaintiff Hobart B. Keatley, but dissent from the affirmance of the portion of the judgment rendered in favor of the United National Bank and Trust Company against plaintiff Ronald H. Keatley.