OPINION
Defendant-appellant, Mary E. Bogard, appeals from an order of the Mahoning County Court of Common Pleas, Probate Court Division, overruling her objections to and adopting a referee's report regarding the disposition of the Estate of Josephine L. Sammartino (decedent)
On August 9, 1993, decedent died testate. Her will designated as co-executrixes and co-beneficiaries her two daughters — defendant-appellant Mary E. Bogard and plaintiff-appellee Joanne Cartwright. On November 19, 1993, both parties filed papers to administer the estate. Subsequently, a dispute arose regarding administration of the estate and the two sisters ceased communication.
The dispute developed when appellant prepared an "INVENTORY" and presented it to appellee for her signature. Appellee took exception to the substance of the "INVENTORY" and refused to sign it. Instead, appellee filed a "NOTICE OF EXCEPTIONS TO INVENTORY (AS PROPOSED)" on March 31, 1994. Subsequently, appellant then went ahead and signed her proposed "INVENTORY" and filed it with the court on April 26, 1994. The case was assigned to a referee and, on May 9, 1994, he held a hearing on the inventory matter. Appellant was the only person who testified.
Appellant took care of decedent in her later years and handled all of her banking and financial affairs from 1987 on. At the hearing it was revealed that prior to decedent's death, appellant was placed on all of her bank accounts as a matter of convenience. (Tr. 22). Withdrawals were made from these accounts prior to decedent's death and deposited in what the referee termed appellant's "personal account[s]." Also, by her own admission, decedent, not appellant, was the depositor of all of the funds in these accounts. (Tr. 19). These withdrawals were the primary cause of the dispute that arose between the sisters in the administration of their mother's estate. The main issue the case presented then was whether those funds were part of the estate and should be returned by appellant to the estate so that it could be properly administered.
The referee took the matter under advisement and subsequently filed his report on June 21, 1994. In the report, the referee made numerous findings of fact and several recommendations, including that appellant return all of the funds to the estate. On July 5, 1994, appellant responded with objections to the referee's report. Appellee responded with a memorandum in opposition to those objections.
After conducting a hearing on the objections, the probate court, on August 29, 1996, filed a judgment entry overruling appellant's objections and adopting the referee's report as its own. Subsequently, appellant filed two separate appeals which this court consolidated. Appellant brings an appeal in two separate capacities — "INDIVIDUALLY AND AS NEXT OF KIN, HEIR AT LAW, BENEFICIARY AND SURVIVING JOINT TENANT OF THE DECEDENT" and as "CO-EXECUTRIX."
"INDIVIDUALLY AND AS NEXT OF KIN, HEIR AT LAW, BENEFICIARY AND SURVIVING JOINT TENANT OF THE DECEDENT," appellant raises eleven assignments of error.
The issues presented by appellant's first, second, fourth, fifth, sixth, and seventh assignments of error were not raised by her in her objections to the referee's report. Consequently, appellant's failure to object constitutes a waiver on appeal of those matters. See Civ.R. 53 (E)(3)(b); Keatley v. UnitedNational Bank Trust Co. (1980), 68 Ohio App.2d 198.
When a case is handled by a referee, Civ.R. 53 (E) details the procedure that is to be followed. The rule provides, in pertinent part, as follows:
 "(b) Form of Objections. * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
Prior to the adoption of the specific language emphasized above in Civ.R. 53 (E)(3)(b), Ohio courts had already addressed this issue. In Keatley v. United National Bank Trust Co. (1980),68 Ohio App.2d 198, the court noted at 200 that:
 "the requirement of preserving a claim of error by making an appropriate objection in the trial court is the concept captured by the objection requirement expressly stated in Civ. R. 53 (E). The requirement of calling the matter to the attention of the trial court as a predicate of appellate review is a proposition of law of general application settled beyond question. See, for example, the voluminous authorities collected in 4 Ohio Jurisprudence 3d, Appellate Review, Section 137."
In her reply brief, appellant responds to the Keatley holding by referring us to a motion for reconsideration which she filed with the probate court on April 3, 1997, some seven months after the court heard appellant's objections to the referee's report and filed a judgment entry accordingly, overruling those objections and adopting the report as its own. A motion for reconsideration filed after a final judgment of the trial court must be viewed as a nullity. Pitts v. Dept. of Transportation
(1981), 67 Ohio St.2d 378. See, also, Kauder v. Kauder (1974),38 Ohio St.2d 265. Not unaware of this proposition of law, the probate court judge properly overruled the motion nunc pro tunc
on June 20, 1997. In view of the fact that the motion was a civil nullity, it would be equally inappropriate for this court to consider its contents.
Appellant alleges in her third assignment of error that:
 "The Probate Court erred as a matter of law and made a decision unsupport [sic.] by the evidence in finding that Mary Elaine Bogard Appellant did not have any interest in John Hancock Tax-Exempt Account and other similar survivorship assets since the joint exhibits clearly were in the name of the decedent and Mary Elaine Bogard as joint tenants with rights of survivorship and the rights of the surviving joint tenant are conclusive evidence as a matter of law."
In our examination of the referee's report as adopted by the trial court below, we are guided by the principle that judgments supported by competent, credible evidence must not be reversed, as being against the manifest weight of the evidence. Gerijo Inc.v. Fairfield (1994), 70 Ohio St.3d 223, 226; C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Gerijo, supra; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. "In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment."Seasons Coal Co., supra.
At issue under this assignment of error are several accounts that were owned by decedent at her death. They included a John Hancock Exempt Income account, John Hancock Cash Management account, Tri-County Credit Union account, and Dollar Savings and Trust account. After the hearing on appellee's exceptions to appellant's proposed inventory, the referee made numerous findings of fact concerning the accounts. The referee characterized the accounts as joint and survivorship accounts for convenience purposes only and also found that appellant had made unlawful withdrawals from the accounts. Therefore, resolution of this assignment of error requires us to first address the appropriate characterization of these accounts and then to examine the propriety of the withdrawals allegedly made by appellant.
Concerning the character of the accounts, appellant's argument is that the accounts are joint and survivorship accounts entitling her to the funds that were remaining in those accounts at decedent's death, citing Wright v. Bloom (1994),69 Ohio St.3d 596. However, as we examine each of the accounts individually, it will become clear that neither the referee's or appellant's characterization of the accounts is correct.
Examination of the character of each of the individual accounts is critical to a determination of who is entitled to the funds that were remaining in those accounts at decedent's death. The Ohio Supreme Court's decision in Wright v. Bloom (1994),69 Ohio St.3d 596, was a watershed case in this area of the law. Prior toWright, there was a presumption that the "[s]ums remaining on deposit at the death of a party to a joint and survivorship account belong to the surviving parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." In reEstate of Thompson (1981), 66 Ohio St.2d 433, paragraph two of the syllabus. Left undisturbed was the additional presumption that "[a] joint and survivorship account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Id., paragraph one of the syllabus.
Confronted with a history of cases reaching inconsistent and indeterminate results, Wright concluded that "efforts to determine survivorship rights by a post-mortem evaluation of extrinsic evidence of depositor intent are flawed to the point of offering no predictability." (Emphasis sic.) Id. at 604. Specifically overruling paragraph two of the Thompson syllabus and altering the survivorship presumption, Wright held that:
 "[t]he opening of a joint and survivorship account in the absence of fraud, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death." Wright, supra, paragraph two of the syllabus
Wright further held at paragraph one of the syllabus that:
 "[t]he survivorship rights under a joint and survivorship account of the co-party or co-parties to the sums remaining on deposit at the death of the depositor may not be defeated by extrinsic evidence that the decedent did not intend to create in such surviving party or parties a present interest in the account during the decedent's lifetime."
Left undisturbed was paragraph one of the Thompson syllabus relating to the ownership during lifetime presumption. Hence, a constructive trust can be imposed on any amounts withdrawn by a co-party in excess of her contributions. Thompson, supra, at 440. In other words, the co-party forfeits any survivorship rights to excess withdrawals and is liable to the decedent's estate for the amount of these withdrawals. In re Estate ofMayer (1995), 105 Ohio App.3d 483, 486.
However, in order to maintain consistency in the treatment of survivorship rights, Wright also held that:
 "[t]he opening of a joint or alternative account without a provision for survivorship shall be conclusive evidence, in the absence of fraud or mistake, of the depositor's intention not to transfer a survivorship interest to the joint or alternative party or parties in the balance of funds contributed by such depositor remaining in the account at his or her death. Such funds shall belong in such case exclusively to the depositor's estate, subject only to claims arising under other rules of law. Wright, supra, paragraph three of the syllabus
Consequently, what type of accounts are involved here is of critical importance.[1] In order to determine the fate of the funds remaining in the accounts at decedent's death, we need to first determine whether each account was a "joint and survivorship" account or a "joint or alternative" account. It is a well established principle that a joint tenancy with an incidental right of survivorship does not exist in Ohio. Forakerv. Kocks (1931), 41 Ohio App. 210, 217. This principle notwithstanding, parties may contract for joint ownership with such a right. Id. If a joint tenancy is expressed without words of survivorship, it will be considered as a tenancy in common.Id. Consequently, in the case of a joint tenancy, there is no presumption of survivorship.[2] Id. Applying these principles to the case before them, the Fifth District in Foraker stated:
 "In the case at bar there was no survivorship, and none can be presumed, so that we believe that under well-established rules in Ohio survivorship must be expressed somewhere, either in the certificates themselves or by notations or declarations to the bank, in order that the survivor may receive them. However, funds owned in common or owned individually by one party can become the property of the survivor, and in all cases in Ohio where the fund has passed to the survivor either the word `survivor,' or a contract declaration for survivorship, has existed in the deposit. In this case there is no survivorship mentioned, no directions to the cashier of the bank, and no contract of survivorship." Id. at 217-218
The only competent, credible evidence presented at the hearing going to the terms or character of the accounts were certain "Joint Exhibits." Joint Exhibit #7 was introduced concerning the Dollar Savings and Trust account. It is a copy of the account passbook. It bears both decedent's and appellant's name, titled as "Josephine L. Sammartino OR Mary B. Bogard." The passbook contains no survivorship language. Since the account is expressed without words of survivorship, it is only a "joint or alternative" account. Therefore, under Wright, the opening of the account is conclusive evidence of decedent's intent not to transfer a survivorship interest to appellant in the balance of funds remaining in the account at decedent's death. Wright,supra, at 607. However, decedent's will specifically bequeathed the account to appellant. Therefore, by operation of decedent's will, appellant is entitled to the balance of funds that were remaining in the account at decedent's death.
Joint Exhibit #9 was introduced concerning the John Hancock Cash Management account. It is a copy of a check drawn on the account and bears decedent's and appellant's name with a "JT TEN" designation. The check contains no survivorship language. Since the account is expressed without words of survivorship, it is only a "joint or alternative" account. Therefore, under Wright, the opening of the account is conclusive evidence of decedent's intent not to transfer a survivorship interest to appellant in the balance of funds remaining in the account at decedent's death. Wright, supra, at 607. Decedent's will does not contain a specific provision addressing the disposition of this account. Consequently, pursuant to the residuary clause of decedent's will, the balance of funds that were remaining in the account at decedent's death should be distributed equally to appellant and appellee.
There was no competent, credible evidence presented concerning the John Hancock Tax Exempt Income Fund account. Decedent's will specifically bequeathed this account to appellee. Therefore, appellee is entitled to the balance of funds that were remaining in the account at decedent's death.
Regarding the Tri-County Credit Union account, Joint Exhibit #6 clearly evidences that the account is a "PAYABLE ON DEATH" (P.O.D.) account. R.C. 2131.10 provides that a person may enter into a written contract with a bank where the funds on account may be made payable on the death of the owner to another person. Although a P.O.D. account is contractual in nature, it allows a person to make a testamentary disposition of assets without following the formalities of the Statute of Wills. Witt v. Ward
(1989), 60 Ohio App.3d 21, 26, motion overruled43 Ohio St.3d 712. The depositor of funds into a P.O.D. account retains both the legal and equitable interest on the account. Friedrich v.Bancohio Nat'l Bank (1984), 14 Ohio App.3d 247, 251. The interest of the beneficiary does not vest until the death of the owner, at which point the beneficiary has a right to enforce this interest.Id.
The terms of the Tri-County Credit Union account, as evidenced by Joint Exhibit #6, designates appellant and appellee as co-beneficiaries of the account. Therefore, the balance of funds that were remaining in the account at decedent's death should have been distributed equally to appellant and appellee.
Next we turn our attention to the allegedly inappropriate withdrawals made by appellant from the accounts. The referee found that appellant had unlawfully withdrawn $2,500.00 from the Tri-County Credit Union on March 4, 1993 and deposited the funds into her personal account. (Report of the Referee, Findings of Fact, p. 3, paragraph 6). Appellant points to Joint Exhibit #5 which is a copy of the front and back of a check from the Tri-County Credit Union for $2,500.00 dated March 4, 1993. The check was made payable to decedent and bears her endorsement. Appellant asserts that her own undisputed testimony revealed that decedent herself arranged this withdrawal. The following testimony is illustrative of the Tri-County Credit Union account transactions:
 "Q Are you familiar with the Tri-County savings account of your mother?
"A Yes.
 "Q And there were several withdrawals made in the spring of 1993; is that right?
"A Correct. She made them herself.
"Q Did she go down to Tri-County?
 "A She wrote them. She was telling me she was writing them a letter.
"Q And she wrote them a letter?
"A Yes.
"Q Requesting those?
"A She told me.
"Q You wrote the letter?
"A No, she did. No, I didn't touch that.
 "Q She wrote the letter requesting that these funds be sent to her?
"A Correct.
"Q Where were they deposited?
 "A Into my checking account or savings account where she told me to put it.
"Q In your personal account?
"A Right.
"Q On both occasions?
 "A Correct." Tr. p. 24, lines 8-23; Tr. p. 25, lines 1-9; cross examination of appellant by Attorney Franken, counsel for appellee
The record substantiates appellant's assertion as to the manner in which the $2,500.00 was withdrawn. There was not, however, competent, credible evidence to support the referee's finding that appellant "unlawfully withdrew" the $2,500.00. Joint Exhibit #5 evidences that the check was made payable to decedent and was endorsed by her, not appellant. Likewise, there was no competent, credible evidence that the money was deposited into appellant's personal account as appellant indicated in her testimony or as the referee concluded. Joint Exhibit #7, which is a copy of the Dollar Savings and Trust account passbook, evidences a deposit of $2,500.00 on March 8, 1993, which is the same day Dollar Savings and Trust endorsed the check identified as Joint Exhibit #5 (i.e., the check from the Tri-County Credit Union for $2,500.00 dated March 4, 1993). As we indicated earlier, the Dollar Savings and Trust account was a joint account held by decedent and appellant. It was not appellant's "personal account."
The referee also found that appellant had withdrawn $7,000.00 from the Tri-County Credit Union account on May 3, 1993, and deposited the funds into her personal account. (Report of the Referee, Findings of Fact, p. 3, paragraph 7). Appellant disputes this finding for the same reasons she disputes the referee's findings concerning the March 4, 1993, $2,500.00 withdrawal from the Tri-County Credit Union account. Joint Exhibit #1 is a copy of the front and back of a check from the Tri-County Credit Union for $7,000.00 dated May 3, 1993. The check was made payable to and bears decedent's endorsement.
The record supports appellant's assertion as to the manner in which the $7,000.00 was withdrawn. There was not, however, competent, credible evidence to support the referee's finding that appellant "unlawfully withdrew" the $7,000.00. Joint Exhibit #1 evidences that the check was made payable to decedent and was endorsed by her, not appellant. Likewise, there was no competent, credible evidence that the money was deposited into appellant's personal account as appellant indicated in her testimony or as the referee concluded. Joint Exhibit #7, the copy of the Dollar Savings and Trust account passbook, evidences a deposit of $7,000.00 on May 5, 1993, which is the same day Dollar Savings and Trust endorsed the check identified as Joint Exhibit #1 (i.e., the check from the Tri-County Credit Union for $7,000.00 dated May 3, 1993). Again, as we indicated earlier, the Dollar Savings and Trust account was a joint account held by decedent and appellant, not appellant's "personal account."
The referee also found that appellant had withdrawn $4,903.83 from the John Hancock Tax Exempt Income Fund on June 30, 1993 and deposited it into her personal account. (Report of the Referee, Findings of Fact, p. 3, paragraph 8). Appellant argues that this finding incorrectly implies that she withdrew the funds for herself. Appellant's testimony regarding this transaction went as follows:
 "Q You are familiar with your mother's tax exempt income fund, is that night, with John Hancock?
"A Right.
 "Q And several months before she passed away there was $4,900 removed from that account; is that correct?
"A Correct.
 "Q And did you sign the documents for the removal of those funds?
"A No, not for John Hancock?
"Q Not for that one?
"A No, I didn't sign for any of them.
 "Q You never removed any funds from these accounts?
"A No. For John Hancock you call in.
"Q You called in?
"A Called in on my mother's request.
 "Q Your mother was in the hospital at that time; is that right?
"A Correct.
 "Q Okay. And this is an account that you on as a joint tenant with right of survivorship; is that correct?
"A Correct.
 "Q And you withdrew on your mother's behalf, I guess, 4,900 and some dollars; is that correct?
"A Correct.
"Q Where was that deposited?
 "A She told me to put into my savings account. "Q Your savings account?
"A Right.
"Q Your personal one?
"A Right.
"Q It wasn't the same one as hers?
"A No.
"Q The one you were joint with her?
"A No.
 "Q You were on joint savings and checking accounts with her; is that right?
"A Right.
 "Q She left those to you in her will, didn't she, those joint checking and savings accounts?
 "A Right." Tr. p. 19, lines 4-23; Tr. p. 20, lines 1-20; cross examination of appellant by Atty. Franken, counsel for appellee
The record supports the referee's finding that $4,903.83 was withdrawn from the account by appellant. However, appellant's testimony that she withdrew the funds at her mother's request went uncontradicted by other testimony or evidence. In addition, the money was not deposited in her personal account as appellant indicated in her testimony or as the referee concluded. Joint Exhibit #7, the copy of the Dollar Savings and Trust account, evidences a deposit in the exact amount of $4,903.83 on July 12, 1993, thirteen days after it was withdrawn from the John Hancock Tax Exempt Income Fund account. The Dollar Savings and Trust account was a joint account held by decedent and appellant, not appellant's "personal account."
With respect to the John Hancock Cash Management Fund account, the referee found that appellant had withdrawn $7,588.61 from the account on August 7, 1993, closing the account, two days after decedent's death, and deposited those funds into her personal account. (Report of the Referee, Findings of Fact, p. 3, paragraph 8) Concerning the alleged improper withdrawal, appellant testified as follows:
"Q Okay. Was that account closed by you.
"A By me, yes.
"Q Okay. Why did you close that account?
"A Why?
"Q Uh-huh.
"A Just to close it out.
 "Q Because any specific reason? Did you think that that was your mother's account, or did you think that that was your account?
 "A I thought it was mine, so I just closed it out being it was left to me.
"Q How do you know it was left to you?
"A It was stated in the will.
"Q Okay.
 "A Or, no, it wasn't either. I am getting all messed up.
"Q It's okay, Mary. That's all right.
"A No, it wasn't in the will.
 "Q But why did you think that that was your account?
 "A Because it was in my name." Tr. p. 70, lines 1-20; direct examination of appellant by Atty. Defazio, counsel for appellant
The record supports the referee's finding that $7,588.61 was withdrawn from the account by appellant. Joint Exhibit #9, the check withdrawing the funds from this account, was made out to cash, and signed by and endorsed by appellant. The check was dated August 7, 1993, two days before decedent's death. The back of the check evidences that the check was deposited on August 16, 1993, seven days after decedent's death, into "SSB AND TR" account #07-11871-6. The record fails to disclose the ultimate destination of these funds, other than that they were under appellant' s control.
As we concluded earlier, the John Hancock Cash Management Fund account was only a joint account and that appellant had no survivorship rights in the account. Therefore, appellant's withdrawal of the $7,588.61 was clearly improper and in violation of her duty as a fiduciary. Additionally, appellant holds those funds in a fiduciary capacity and has a duty to return them to the estate. Gillota v. Gillota (1983), 4 Ohio St.3d 222, 225.
Lastly, appellant takes issue with the referee's finding that certain other assets had yet to be fully accounted for, specifically certain items of jewelry and household goods. (Report of the Referee, Findings of Fact, p. 4, paragraph 12) With respect to the jewelry, appellant states that her counsel advised the referee that it would be included in an amended inventory. (Tr. 12). With respect to the household goods, appellant refers to her testimony that the goods were given to her and appellee by decedent and were accepted and divided between the two of them after decedent moved out of her apartment shortly before her death. Appellant suggests that if the referee was implying that those items had yet to be accounted for then appellee, as co-executrix, was equally culpable because there was no dispute that appellee took some of the items before decedent died. (Tr. 74)
While it is true that appellant's testimony was uncontradicted as to this issue, the referee, in his finding, did not allocate blame to either party. He simply found that some items had yet be accounted for — some in the possession of appellant, some in the possession of appellee.
Accordingly, appellant's third assignment has merit to the extent indicated.
Appellant alleges in her eighth assignment of error, that:
 "The Probate Court erred as a matter of law and abused its discretion in removing Mary E. Bogard as Co-Executrix since Mary Bogard is the primary beneficiary."
Appellant argues that it was an abuse of discretion for the probate court to remove her as an executor and that the decision to do so was not supported by evidence. Appellant further takes issue with appellee remaining as an executor. Appellant argues that appellee would not act in the best interest of the estate because she is to receive so little under the will.
R.C. 2109.24 provides that the probate court may remove a fiduciary "for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law." Removal of a fiduciary is discretionary with the probate court and an order removing a fiduciary will not be overturned on appeal absent a clear showing of an abuse of discretion. In reEstate of Russolillo (1990), 69 Ohio App.3d 448, 450. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, on unconscionable. Id.
Appellant's improper withdrawal of funds from the John Hancock Cash Management Fund account after decedent's death was cleanly reason enough for the probate court to remove appellant as an executor. Accordingly, appellant's eighth assignment of error is without merit.
Appellant alleges in her ninth assignment of error that:
 "The Court abused its discretion in ordering Mary E. Bogard to repay all the inter vivos transfer to the Decedent's estate."
The issue presented by this assignment of error was addressed and resolved under appellant's third assignment of error.
Appellant alleges in her tenth assignment of error that:
 "The Court abused its discretion in ordering Mary E. Bogard to be subject to a concealment of assets proceeding and assigning to her the burden of costs, including attorneys fees and other cost and expenses.
The plain language of R.C. 2109.50 indicates that the probate court may, on its own motion, initiate a concealment of assets proceeding. Appellant complains of procedural violations when such a proceeding never took place.
Appellee correctly notes that the probate court has the authority to deny appellant's reimbursement for defending against an exceptions to inventory proceeding. Additionally, all estate administrative expenses and costs are subject to the probate court's review. Whitaker v. Estate of Whitaker (1995), 105 Ohio App.3d 46;In re Estate of Love v. Love (1965), 1 Ohio App.2d 571.
A review of the record reveals no conduct on the pant of the probate court that indicates that the court abused its discretion on this matter. Accordingly, appellant's tenth assignment of error is without merit.
Appellant alleges in her eleventh assignment of error that:
 "The Court erred as a matter of law in its Judgment Entry dated Aug. 29, 1996 since said Judgment Entry incorporated by reference a Referee Report dated July 5, 1994 and no such report exists as set forth in the Docket of this case."
The probate court adopted the referee's report in a judgment entry filed August 29, 1996. The last paragraph of the entry states that the court is adopting the Report of the Referee dated July 5, 1994. Since the report actually was filed on June 21, 1994, the court's reference to a report filed on July 5, 1994, clearly was in error. However, the error is merely a clerical one and harmless in nature. See Civ.R. 61. Moreover, a complete reading of the court's judgment entry reveals that the court was referring to the correct report. In the second paragraph of that same entry, the court correctly refers to the report filed June 21, 1994.
Accordingly, appellant's eleventh assignment of error is without merit.
In her capacity as co-executrix, appellant alleges five assignments of error. The issues presented by appellant's first, second, and fourth assignments of error were not raised by her in her objections to the referee's report. Consequently, appellant's failure to object constitutes a waiver on appeal of those matters. See Civ.R. 53 (E)(3)(b); Keatley v. United NationalBank Trust Co. (1980), 68 Ohio App.2d 198.
Appellant alleges in her third assignment of error that:
 "THE TRIAL COURT ERRED IN ADOPTING THE REPORT OF REFEREE BECAUSE MANY OF THE FINDINGS OF MATERIAL FACTS CONTAINED IN SAID REPORT ARE NOT SUPPORTED BY THE EVIDENCE, AND IN FACT, ARE REFUTED BY THE EVIDENCE BEFORE THE TRIAL COURT."
The issues raised by this assignment of error were thoroughly addressed and resolved under appellant's third assignment of error as an individual/beneficiary.
Appellant alleges in her fifth assignment of error that:
 "BY ADOPTING THE REPORT OF REFEREE THE TRIAL COURT ERRED IN FAILING TO APPLY NEW CONTROLLING CASE LAW AS ESTABLISHED BY THE OHIO SUPREME COURT"
The issues raised by this assignment of error were addressed and resolved under appellant's third assignment of error as an individual/beneficiary.
The judgment of the probate court adopting the decision of the referee is hereby reversed in part and affirmed in part and the case remanded for further proceedings according to law and consistent with this opinion. Specifically, for purposes of remand, we reiterate our findings concerning the disposition of decedent's accounts.
The Dollar Savings and Trust account is a joint account. Decedent's will specifically bequeathed the account to appellant. Therefore, by operation of decedent's will, appellant is entitled to the balance of funds that were remaining in the account at decedent's death.
The John Hancock Cash Management account is a joint account. Decedent's will does not contain a specific provision addressing the disposition of the account. Therefore, pursuant to the residuary clause of decedent's will, the balance of funds that were remaining in the account at decedent's death should be distributed equally to appellant and appellee.
There was no competent, credible evidence presented below to suggest that the John Hancock Tax Exempt Income Fund account was anything other than an account owned solely by decedent. Decedent's will specifically bequeathed the account to appellee. Therefore, appellee is entitled to the balance of funds that were remaining in the account at decedent's death.
The Tri-County Credit Union account is a P.O.D. account. By operation of law, the balance of funds that were remaining in the account at decedent's death passes equally to the two designated co-beneficiaries, appellant and appellee. The contrary disposition attempted by decedent's will is ineffective.
With one exception, there was no competent, credible evidence presented below that appellant made "unlawful" withdrawals from the aforementioned accounts. There was competent, credible evidence that the $7,588.61 withdrawn by appellant from the John Hancock Cash Management account on August 7, 1993, was improper. Appellant holds those funds in her fiduciary capacity and must return them to the estate for further distribution in accordance with decedent's will.
Vukovich, J., concurs
Waite, J., concurs
APPROVED:
 ________________________ Gene Donofrio Judge
[1] In determining whether Wright or Thompson applied, this court has noted the importance of first determining whether a joint and survivorship account had actually been created. SeeDarvanan v. Home Savings and Loan Co. of Youngstown (Nov. 15, 1995), Mahoning App. No. 93CA180, unreported, 1995 WL 684098.
[2] The Ohio Supreme Court reaffirmed this concept in Wright,supra, when it held at paragraph three of the syllabus that "[t]he opening of a joint or alternative account without aprovision for survivorship shall be conclusive evidence * * * of the depositor's intention not to transfer a survivorship interest to the joint or alternative party or parties in the balance of funds contributed by such depositor remaining in the account at his or her death." (Emphasis added.)